[Nos. 14042-0-II; 14336-4-II.   Division Two.   January 7, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. DONALD RAY WALLWAY, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. DANIEL HOINOWSKI, *Appellant.*

*Mark A. Panitch,* for appellant Wallway (appointed counsel for appeal).

*Thomas C. Phelan,* for appellant Hoinowski (appointed counsel for appeal).

*Arthur D. Curtis, Prosecuting Attorney,* and *Richard A. Melnick, Deputy,* for respondent.

ALEXANDER, J. — In this consolidated appeal, Donald Ray Wallway and Daniel Hoinowski each appeal their conviction on a charge of unlawful manufacture of a controlled substance. Both contend that the trial court erred in not suppressing evidence seized pursuant to a search warrant, and in refusing to order disclosure of the identity of a confidential informant. Wallway, alone, contends that the information charging him with unlawful manufacture of a controlled substance was deficient in that it did not include all of the elements of the charge. We affirm each defendant's conviction.

On February 27, 1989, a Clark County District Court judge issued a warrant to search four residences in Clark County. The residences allegedly housed marijuana growing operations. One of the residences was occupied by Donald Ray Wallway.[1] Another was occupied by Daniel Hoinowski. The district court judge ordered that the searches take place within 10 days of the date the warrant issued.

The basis for the search warrant was an affidavit prepared by Clark County Deputy Sheriff Mike Nolan, a member of the Clark-Skamania Narcotics Task Force. Nolan's affidavit was based, in large part, on information he received from what he described as a "confidential, reliable informant". The identity of the informant was known to the law

---

[1] The residence occupied by Wallway was located on property belonging to Wallway's brother, Rick. According to counsel for the State, Rick Wallway is now deceased.

enforcement officers but it was not disclosed to the district court judge who issued the warrant.

On March 6, 1989, the search warrant was executed at the Wallway and Hoinowski residences by Clark County law enforcement officers. A search of a building on the property occupied by Wallway produced 48 growing marijuana plants as well as equipment used to grow the marijuana. A search of Hoinowski's residence turned up 21 growing marijuana plants and equipment commonly used in grow operations (*e.g.*, halide lights and shields).

Wallway and Hoinowski were separately charged with unlawful manufacture of a controlled substance, possession of a controlled substance with intent to deliver, and possession of over 40 grams of a controlled substance. Each moved to suppress the evidence obtained in the search of their premises, claiming that the warrant was not executed in a timely fashion. They claimed, also, that the search warrant was defective because (1) the informant's credibility and basis of knowledge were not established by the affidavit; (2) the information provided by the informant was stale; and (3) the supporting affidavit contained material omissions. Their motions were denied.

Wallway and Hoinowski each moved for an order requiring the disclosure of the informant's identity. Alternatively, they asked the Superior Court to hold an in camera hearing with the informant to assess his or her reliability. After conducting an in camera hearing, the trial court denied their motions to disclose the informant's identity.

Wallway and Hoinowski were both convicted of unlawful manufacture of a controlled substance.

## I
### SUFFICIENCY OF THE INFORMATION

Wallway alone contends that the information charging him with unlawful manufacture of a controlled substance violated his due process rights because it failed to provide him with adequate notice of the elements of the crime with which he was charged. Under the Sixth Amendment, Const.

art. 1, § 22 (amend. 10) and CrR 2.1(b), an information must include the statutory and essential common law elements of the crime charged in order to apprise the accused of the nature of the charge so he or she can prepare an adequate defense. *See State v. Kjorsvik,* 117 Wn.2d 93, 97-102, 812 P.2d 86 (1991). A charging document that does not articulate all of the elements of the crime with which the defendant is charged may violate the defendant's due process rights. *See Kjorsvik,* 117 Wn.2d at 107; *State v. Leach,* 113 Wn.2d 679, 691, 782 P.2d 552 (1989).

██ Wallway did not raise this issue at the trial court. Nevertheless, a challenge to the constitutional sufficiency of a charging document may be raised for the first time on appeal. *Kjorsvik,* 117 Wn.2d at 102. When that occurs, however, the reviewing court must construe the document more liberally in favor of validity than it would if it were challenged before or during trial. *Kjorsvik,* 117 Wn.2d at 105-08.[2] Under that standard, the reviewing court asks:

> (1) [D]o the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if so, (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language which caused a lack of notice?

*Kjorsvik,* 117 Wn.2d at 105-06.

The information which charged Wallway read as follows:

> That ... Donald Ray Wallway ... in the County of Clark, State of Washington, on or about the 6th day of March, 1989, did *unlawfully manufacture a controlled substance,* to-wit: Marijuana, in violation of RCW 69.50.401 (a), contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Washington.

(Italics ours.)

Wallway contends that the information was defective because it did not specify the mens rea necessary to commit the offense. As noted above, the State alleged that Wallway violated RCW 69.50.401(a). That statute provides in part:

---

[2]Applying a liberal standard of review to such challenges provides an incentive for defendants to raise sufficiency challenges in a timely fashion. *See Kjorsvik,* 117 Wn.2d at 103.

> Except as authorized by this chapter, it is unlawful for any person to *manufacture*, deliver, or possess with intent to manufacture or deliver, *a controlled substance.*

(Italics ours.)

██ The portion of the statute making it unlawful to manufacture a controlled substance does not specify that guilty knowledge is an element of that offense. Accordingly, at issue is whether guilty knowledge is intrinsically an element of the charge of unlawful manufacture of a controlled substance.

In *State v. Boyer,* 91 Wn.2d 342, 344, 588 P.2d 1151 (1979), the Supreme Court held that guilty knowledge (*i.e.*, an understanding of the identity of the product being delivered), is an element of the charge of unlawful delivery of a controlled substance under RCW 69.50.401(a). It said:

> [W]ithout the mental element of knowledge, even a postal carrier would be guilty of the crime were he innocently to deliver a package which in fact contained a forbidden narcotic. Such a result is not intended by the legislature.

*Boyer,* 91 Wn.2d at 344.

On the other hand, in *State v. Sims,* 119 Wn.2d 138, 142, 829 P.2d 1075 (1992), the court held that it is not necessary to allege that a person acted with guilty knowledge when that person is charged under RCW 69.50.401(a) with possession of a controlled substance with intent to manufacture or deliver. The court reasoned that:

> [t]he statutory elements of the crime of unlawful possession of a controlled substance with intent to manufacture or deliver include the requisite mental state, *i.e.*, the *intent* to manufacture or deliver a controlled substance.
>
> It is impossible for a person to intend to manufacture or deliver a controlled substance without knowing what he or she is doing. By intending to manufacture or deliver a controlled substance, one necessarily knows what controlled substance one possesses as one who acts intentionally acts knowingly.

*Sims,* 119 Wn.2d at 142. Likewise, in *State v. Cleppe,* 96 Wn.2d 373, 378-81, 635 P.2d 435 (1981), *cert. denied,* 456 U.S. 1006 (1982), the court held that guilty knowledge was not an element of the crime of possession of a controlled substance.

For purposes of this case, we assume that guilty knowledge is an element of the crime of unlawful manufacture of a controlled substance. Nevertheless, applying *Kjorsvik*'s standard of liberal, postverdict review, we conclude that the information in this case was adequate enough to withstand Wallway's attack. The term "manufacture" includes "the production, preparation, propagation . . . or processing of a controlled substance . . .." Former RCW 69.50.101(o). The term "production" includes the planting, cultivation, growing, or harvesting of a controlled substance. Former RCW 69.50.101(w). Activities such as producing, preparing, propagating, processing, planting, cultivating, growing or harvesting a plant almost always take place with knowledge of the nature of the plant. Thus, under *Kjorsvik*'s liberal standard, an allegation that the accused manufactured marijuana is at the same time an allegation that the accused had knowledge of the identity of the substance being manufactured.

Additionally, the information in this case alleges that the defendant "unlawfully" manufactured a controlled substance, and the Supreme Court recently implied that the word "unlawfully" may be enough to allege knowledge when knowledge is an element of a drug case. In dictum in *State v. Johnson,* 119 Wn.2d 143, 149-50, 829 P.2d 1078 (1992), the court said:

> We do not, therefore, hold "unlawfully", standing alone, will never be enough to allege knowledge. In fact, when liberally construing an information challenged for the first time on appeal, we have held "unlawfully" sufficient to allege intent, unless there is prejudice to the defendant. *See, e.g., Kjorsvik,* 117 Wn.2d at 110-11.

What we have said is not refuted by the fact that it is possible to conceive of a case in which a person might cultivate, grow or harvest marijuana without knowledge of its identity. *Commonly*, manufacture of marijuana involves knowledge of the identity of the plant being cultivated. *Rarely*, it might not. Applying *Kjorsvik*'s liberal standard of review, however, we think that an ordinary accused reading a criminal information would contemplate the common situation, not the rare

one,[3] and that he or she therefore would be on notice that both manufacture and knowledge were being alleged.

Furthermore, we do not believe that Wallway has demonstrated that he was prejudiced by the fact that the information did not state that guilty knowledge was an element of the offense. Wallway was found to have 48 marijuana plants at his house and he made no claim at trial that he was propagating these plants, not knowing them to be marijuana.

## II

### TIMELINESS OF THE WARRANT

Initially, Wallway and Hoinowski contend that the search was invalid because the warrant was not executed in a timely fashion. They argue that under RCW 69.50.509 a warrant is to be executed and returned within 3 days of issuance.[4] We

---

[3]Indeed, if a particular accused reading an information were to contemplate the rare situation involving manufacture without knowledge of the identity of the substance manufactured, one would expect the accused to attack the sufficiency of the information before trial, and at that point the matter could be dealt with under pretrial standards, *see State v. Johnson*, 119 Wn.2d 143, 149-50, 829 P.2d 1078 (1992), rather than *Kjorsvik's* standards.

[4]RCW 69.50.509 provides:
"If, upon the sworn complaint of any person, it shall be made to appear to any judge of the superior court, district court, or municipal court that there is probable cause to believe that any controlled substance is being used, manufactured, sold, bartered, exchanged, administered, dispensed, delivered, distributed, produced, possessed, given away, furnished or otherwise disposed of or kept in violation of the provisions of this chapter, such judge shall, with or without the approval of the prosecuting attorney, issue a warrant directed to any law enforcement officer of the state, commanding him or her to search the premises designated and described in such complaint and warrant, and to seize all controlled substances there found, together with the vessels in which they are contained, and all implements, furniture and fixtures used or kept for the illegal manufacture, sale, barter, exchange, administering, dispensing, delivering, distributing, producing, possessing, giving away, furnishing or otherwise disposing of such controlled substances, and to safely keep the same, *and to make a return of said warrant within three days*, showing all acts and things done thereunder, with a particular statement of all articles seized and the name of the person or persons in whose possession the same were found, if any, and if no person be found in the possession of said articles, the returns shall so state. The provisions of RCW 10.31.030 as now or hereafter amended shall apply to actions taken pursuant to this chapter." (Italics ours.)

disagree. In *State v. Thomas,* 121 Wn.2d 504, 851 P.2d 673 (1993), a defendant charged with possession of a controlled substance with intent to deliver challenged the timeliness of a search warrant that was executed 9 days after it was issued. Thomas argued, as Wallway and Hoinowski do, that RCW 69.50.509 requires a warrant to be executed and returned within 3 days of the date it was issued. In holding that the warrant was executed in a timely fashion, the Washington Supreme Court opined that CrR 2.3 controls the time period for *execution* of a warrant whereas RCW 69.50.509 establishes the time period for *return* of a warrant after execution. *See Thomas,* 121 Wn.2d at 512-13.

▮Although *Thomas* dealt with CrR 2.3, rather than CrRLJ 2.3, we are satisfied that the reasoning of *Thomas* applies equally well in the CrRLJ 2.3 context because the relevant language of CrRLJ 2.3 and CrR 2.3 is virtually identical.[5] CrRLJ 2.3(c) provides in pertinent part:

> The warrant shall command the officer to search, within a specified period of time not to exceed 10 days . . ..

In light of *Thomas,*we are satisfied that the warrant was served in a timely fashion, it being undisputed that the search pursuant to the warrant took place within 10 days of its issuance and that the return on the warrant was made within 3 days of its execution.

A majority of the panel having determined that only the foregoing portion of this majority opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

MORGAN, C.J., concurs.

---

[5] CrR 2.3(c) provides in pertinent part: "If the court finds that probable cause for the issuance of a warrant exists, it shall issue a warrant . . . The warrant shall be directed to any peace officer. It shall command the officer to search, within a specified period of time not to exceed 10 days, the person, place, or thing named for the property or person specified. . . ."

PETRICH, J.* (concurring) — The majority unnecessarily extends its holding to support the validity of Wallway's information by inferring mens rea from the statutory definition of the terms "manufacture", former RCW 69.50.101(o), and "production", former RCW 69.50.101(w).

In the case before us we need go no further than *State v. Kjorsvik*, 117 Wn.2d 93, 812 P.2d 86 (1991), as explained by *State v. Johnson*, 119 Wn.2d 143, 829 P.2d 1078 (1992), where at pages 149-50 the court said, "when liberally construing an information challenged for the first time on appeal, we have held 'unlawfully' sufficient to allege intent, unless there is prejudice to the defendant."

Here Wallway's information charged that he did "unlawfully manufacture a controlled substance, to-wit: Marijuana, in violation of RCW 69.50.401 (a)". Knowledge of the nature of the substance manufactured or guilty intent is thus implicit in the allegation and satisfies the *Kjorsvik* requirements.

---

*Judge John A. Petrich was a member of the Court of Appeals at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to CAR 21(c).