[No. 20692-7-II.   Division Two.   February 27, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSE NUNEZ-MARTINEZ, *Appellant*.

*Antonio Salazar,* for appellant (appointed counsel for appeal).

*James J. Stonier, Prosecuting Attorney,* and *Lisa E. Tabbut, Deputy,* for respondent.

MORGAN, J. — Jose Nunez-Martinez was convicted of three counts of delivering a controlled substance. His presumptive sentence on one of the three counts was enhanced by 24 months due to a finding that he had delivered within 1,000 feet of a school bus route stop. He now argues that the charging document was defective because it failed to allege that he knew the substance he was delivering was amphetamine. He also argues that the evidence was insufficient to support the finding by reason of which his presumptive sentence was enhanced. We affirm.

In October and November 1995, an informant for the Cowlitz/Wahkiakum Narcotics Task Force made a series of controlled buys that included purchases of amphetamine on November 3, 1995, November 6, 1995, and November 22, 1995. Later, he identified the seller as Nunez-Martinez.

On February 21, 1996, the State charged Nunez-Martinez with three counts pertinent here.[1] In final amended form, those counts alleged:

## COUNT III

### VIOLATION UNIFORM CONTROLLED SUBSTANCES ACT

The defendant, in the County of Cowlitz, State of Washington, on or about the 3rd day of November, 1995, did feloniously deliver amphetamine, knowing such substance to be a controlled substance; contrary to RCW 69.50.401(a) and against the peace and dignity of the State of Washington.

## COUNT IV

### VIOLATION UNIFORM CONTROLLED SUBSTANCES ACT

The defendant, in the County of Cowlitz, State of Washington, on or about the 6th day of November, 1995, did feloniously deliver amphetamine, knowing such substance to be a controlled substance; contrary to RCW 69.50.401(a) and against the peace and dignity of the State of Washington.

## COUNT V

### VIOLATION UNIFORM CONTROLLED SUBSTANCES ACT

The defendant, in the County of Cowlitz, State of Washington, on or about the 22nd day of November, 1995, in a protected zone, to wit: within one thousand feet of Longview School District No. 122's bus stop at 220 Baltimore, did feloni-

---

[1]The counts pertinent here are III, IV and V. The jury later acquitted the defendant on Counts I and II.

ously deliver amphetamine, knowing such substance to be a controlled substance; contrary to RCW 69.50.401(a); RCW 69.50.435; RCW 9.94A.310(5) and against the peace and dignity of the State of Washington.[2]

The matter proceeded to a jury trial, during which Nunez-Martinez moved to dismiss on the ground that the information, which alleged that he knew he was delivering a controlled substance, was deficient for not also alleging that he knew he was delivering amphetamine. The trial court denied the motion and instructed the jury that it could convict Nunez-Martinez if it found "(1) That on or about [the alleged date], the defendant delivered a controlled substance, to wit: amphetamine; (2) That the defendant knew it was a controlled substance; and (3) That the acts occurred in the State of Washington."[3] The jury returned general verdicts of guilty on Counts III, IV and V, and a special verdict finding that the delivery charged in Count V had occurred within 1,000 feet of a school bus stop. The trial court later imposed a standard range sentence of 87 months.

## I.

On appeal, Nunez-Martinez reiterates his argument that the information was deficient because it failed to allege that he knew he was delivering amphetamine. To be constitutionally adequate, an information must allege each element of the crime.[4] The elements of delivery are (1) delivery, and (2) "guilty knowledge."[5] Under existing Washington law, however, "[i]t is not clear whether the defendant must know that the substance was a specific

---

[2]Clerk's Papers, at 6.

[3]Clerk's Papers, at 79.

[4]*State v. Vangerpen*, 125 Wn.2d 782, 787, 888 P.2d 1177 (1995); *State v. Valdobinos*, 122 Wn.2d 270, 283, 858 P.2d 199 (1993); *State v. Johnson*, 119 Wn.2d 143, 147, 829 P.2d 1078 (1992); *State v. Kjorsvik*, 117 Wn.2d 93, 101-02, 812 P.2d 86 (1991); *State v. Wallway*, 72 Wn. App. 407, 410-11, 865 P.2d 531 (1994).

[5]RCW 69.50.401(a); *State v. Boyer*, 91 Wn.2d 342, 344, 588 P.2d 1151 (1979).

substance or whether the defendant must know that the substance was a controlled substance."[6]

*State v. Boyer*[7] imposed a guilty knowledge requirement to protect the innocent. It said:

> The issue is whether guilty knowledge, an understanding of the identity of the product being delivered, is a part of the crime . . . . The language of the statute thus provides no guidance on the issue . . . . However, without the mental element of knowledge, even a postal carrier would be guilty of the crime were he innocently to deliver a package which in fact contained a forbidden narcotic.[8]

In our view, the guilty knowledge required by *Boyer* is knowledge that the substance being delivered is a controlled substance. It is not knowledge of the substance's exact chemical or street name. As noted by the Wisconsin Supreme Court, there would seem to be little public purpose in "insulating from criminal liability those defendants who knowingly deal in prohibited controlled substances, but are ignorant, mistaken, or willing to misrepresent the exact nature or chemical name of the substance which they traffic."[9]

---

[6]WPIC 50.06, cmt. at 645 (2d ed. 1994).

[7] 91 Wn.2d 342, 344, 588 P.2d 1151 (1979).

[8]*Id.* at 344.

[9]*State v. Sartin*, 200 Wis. 2d 47, 546 N.W.2d 449, 456 (1996). Other jurisdictions agree with respect to delivery. *See, e.g., Carter v. United States*, 591 A.2d 233, 235 (D.C. App. 1991) (all that is required under the UCSA is that one intentionally distribute a controlled substance); *People v. Bolden*, 62 Ill. App. 3d 1009, 379 N.E.2d 912, 916 (1978) (State not required to prove that the defendant knew the precise nature of the controlled substance delivered where defendant knew he was delivering a controlled substance); *People v. James*, 38 Ill. App. 3d 594, 348 N.E.2d 295, 297-98 (1976) (sufficient evidence to convict defendant of delivery of a controlled substance, even if he may erroneously have thought that he was delivering mescaline instead of LSD); *State v. Mendez*, 42 N.C. App. 141, 256 S.E.2d 405, 409 (1979) (defendant's convictions for possession, sale, and delivery of LSD supported by sufficient evidence because the State is not required to offer evidence showing that the defendant knew the scientific name or the actual chemical composition of the controlled substance); *State v. Barr*, 90 S.D. 9, 237 N.W.2d 888, 893-94 (1976) (defendant's knowledge that he delivered a hallucinogen was sufficient to support his conviction, even if he was mistaken about the exact identity of the hallucinogen).

Although Nunez-Martinez argues to the contrary, *State v. Johnson*[10] does not compel a contrary result. In that case, the information alleged that the defendant "did unlawfully deliver a controlled substance; to wit: cocaine."[11] The defendant sought dismissal based on the State's failure to allege guilty knowledge of any kind. The State responded (1) that "because the 'knowledge' element of unlawful delivery originated in case law rather than the statute, it need not appear in an information;"[12] and (2) that if the knowledge element had to appear, it was incorporated in the word "unlawfully."[13] In the course of rejecting these arguments, the Supreme Court did not consider whether a defendant must know not only that he or she is delivering a controlled substance, but also the exact chemical or street name of the substance.

In summary, we hold that the State was required to allege and prove that Nunez-Martinez knew he was delivering a controlled substance. It was not required to allege or

---

Other jurisdictions also agree with respect to offenses similar to delivery. *See, e.g., United States v. Lopez-Martinez*, 725 F.2d 471, 475 (9th Cir.), *cert. denied*, 469 U.S. 837 (1984); *United States v. Jewell*, 532 F.2d 697, 698 (9th Cir.) (a defendant who has knowledge that he possesses a controlled substance may have the state of mind necessary for conviction even if he does not know which controlled substance he possesses), *cert. denied*, 426 U.S. 951 (1976); *People v. Romero*, 55 Cal. App. 4th 147, 64 Cal. Rptr. 2d 16, 23 (1997) (even if defendant thought he was dealing only in marijuana, he had the requisite knowledge to be convicted of possession, sale, and transportation of cocaine as well); *People v. Clark*, 41 Colo. App. 456, 589 P.2d 1379, 1380 (1978) (defendant's conviction for dispensing PCP was warranted even though he may have believed he was dispensing THC, so long as he intended to dispense a dangerous drug); *Weaver v. State*, 145 Ga. App. 194, 243 S.E.2d 560, 562 (1978) (defendant's intent to sell a controlled substance was sufficient to support his conviction even if he believed he was selling THC instead of heroin); *Commonwealth v. Rodriguez*, 415 Mass. 447, 614 N.E.2d 649, 653 (1993) (proof that the defendant knew the exact nature of the controlled substance was not an element of the crime of trafficking in cocaine). *See also Sartin*, 546 N.W.2d at 455-56 (providing survey of other relevant cases).

[10] 119 Wn.2d 143, 829 P.2d 1078 (1992).

[11] *Id.* at 145.

[12] *Id.* at 146.

[13] *Id.* at 147.

prove that he knew he was delivering amphetamine, and the trial court did not err by denying the motion to dismiss.

## II.

Nunez-Martinez also argues that the trial court erred by imposing a school bus stop enhancement on Count V. A defendant's presumptive sentence is enhanced by 24 months if he or she delivers a controlled substance within 1,000 feet of "a school bus stop as designated on maps submitted by school districts to the office of the superintendent of public instruction [SPI]."[14]

Here, an employee of the Longview School District testified that the district sent a map to SPI in each year before 1995. In 1995, however, the District sent a computer disk that listed the longitude and latitude of each designated school bus stop. When converted to a printed document, the disk showed a school bus stop at 220 Baltimore Street, about 150 feet from the location of the delivery charged in Count V.

In our view, the disk was a map for purposes of RCW 69.50.435(f)(3); it listed the precise location of each school bus stop, just as a map would have, so it was the equivalent of a map for all intents and purposes. It described a school bus route stop at 220 Baltimore Street, and an officer testified that Nunez-Martinez delivered about 150 feet from that location. The evidence was sufficient to support the enhancement, and the trial court did not err by imposing it.

Affirmed.

SEINFELD and ARMSTRONG, JJ., concur.

---

[14]Former RCW 69.50.435(f)(3) (1994); former RCW 69.50.435(a) (1994); former RCW 9.94A.310(5) (1994).