[No. 21680-2-III. Division Three. May 25, 2004.]

THE STATE OF WASHINGTON, *Respondent*, v. MARY A. WARNICK, *Appellant*.

*Janet G. Gemberling*, for appellant.

*Steven J. Tucker, Prosecuting Attorney*, and *Kevin M. Korsmo* and *Andrew J. Metts III, Deputies*, for respondent.

KURTZ, J. — Mary A. Warnick appeals her Spokane County conviction for the crime of manufacture of a controlled substance—methamphetamine. She contends her due process rights were violated because the "to convict" instruction did not include an essential element of the crime. She also raises issues in a statement of additional grounds for review. We affirm Ms. Warnick's conviction.

Ms. Warnick and codefendant Daniel Case were charged by information alleging that "on or about December 19, 2001, [they] did knowingly manufacture a controlled sub-

stance, to-wit: Methamphetamine." Clerk's Papers (CP) at 1. They were arrested that afternoon in the garage of the home where Mr. Case was living with his mother, Arlene Carlson.

In the garage, police seized methamphetamine and manufacturing equipment, chemicals, and supplies. The materials seized included a comprehensive methamphetamine-making kit—contained in a large duffel bag—identified by both Ms. Carlson and Mr. Case as belonging to Ms. Warnick. The kit contained typical methamphetamine processing materials and equipment, as well as the prime ingredients ephedrine and gray iodine. Police also seized from the garage a Corningware dish containing fresh methamphetamine crystals, containers of unrefined methamphetamine oil, a hot plate and pressure cooker, a gas mask, a funnel with white residue, an electronic scale, other liquids and chemicals associated with methamphetamine production, two syringes of clear liquid methamphetamine, and a Day Planner containing Ms. Warnick's driver's license.

Mr. Case and Ms. Warnick were tried separately. During Ms. Warnick's trial, Mr. Case testified that from June through December 2001, Ms. Warnick often used his mother's garage to manufacture methamphetamine. Her signature method was to use a pressure cooker and Corningware plates and her typical ingredients included iodine, red phosphorous, and ephedrine. According to Mr. Case, Ms. Warnick had brought the methamphetamine-making kit to the garage about 20 minutes before the arrest. He further testified that Ms. Warnick was finishing a batch of the drug and they were about to use the loaded syringes when the police arrived.

Ms. Warnick testified she was not involved in methamphetamine manufacturing and was falsely accused by the State's witnesses. She testified that Mr. Case was storing her jet ski in the garage and she was there to discuss the jet ski. She denied seeing drugs in the garage or

handling any drugs or drug manufacturing equipment, including the duffel bag.

The court gave instruction 7 without objection:

To convict the defendant of the crime of manufacture of a controlled substance, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the 19th day of December, 2001, the defendant manufactured a controlled substance;

(2) That the defendant knew that the substance manufactured was methamphetamine; and

(3) That the acts occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

CP at 28.

In addition, instruction 9 defined manufacture. Instruction 10 stated that methamphetamine is a controlled substance. Instruction 6 stated "It is a crime for any person to manufacture a controlled substance that the person knows to be a controlled substance." CP at 27. Instruction 11 defined when a person acts with knowledge or knowingly.

The jury convicted Ms. Warnick as charged. She appeals.

## ANALYSIS

Was Ms. Warnick denied due process because instruction 7 did not require the State to prove as an essential element that Ms. Warnick knew the substance being manufactured was a controlled substance?

■■■ Due process requires that the State prove every essential element of a crime beyond a reasonable doubt. *State v. Byrd*, 125 Wn.2d 707, 713, 887 P.2d 396 (1995) (citing *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)). It is reversible error to instruct the

jury in a manner that would relieve the State of this burden. Failure to instruct the jury as to every element of the crime charged is constitutional error that can be raised initially on appeal. *State v. Aumick*, 126 Wn.2d 422, 429, 894 P.2d 1325 (1995).

■■ Consistent with these fundamentals, Ms. Warnick posits that the State is required to prove she knowingly manufactured a controlled substance. *State v. Wallway*, 72 Wn. App. 407, 412-13, 865 P.2d 531 (1994). Because the jury instructions did not require proof of that element, she concludes she was deprived of due process and a fair trial. We disagree.

RCW 69.50.401(a) provides "it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." Under RCW 69.50.401(a), offenses involving moral turpitude are considered mala in se offenses for which guilty knowledge is deemed a nonstatutory element. *See, e.g., State v. Hartzog*, 26 Wn. App. 576, 592-93, 615 P.2d 480 (1980), *rev'd in part on other grounds*, 96 Wn.2d 383, 635 P.2d 694 (1981). For example, one of the essential elements of *delivery* of a controlled substance is knowledge that the substance being delivered is a controlled substance. *See State v. Boyer*, 91 Wn.2d 342, 344, 588 P.2d 1151 (1979). Without the mental element of knowledge, even a postal carrier would be guilty of a crime for the innocent delivery of a package that in fact contained illegal drugs. Such a result was not intended by the legislature. *Id.*

In other cases, courts have assumed in dicta that manufacture of a controlled substance is likewise a malum in se offense for which guilty knowledge is a nonstatutory element. *See Wallway*, 72 Wn. App. at 413; *Hartzog*, 26 Wn. App. at 593; *State v. Smith*, 17 Wn. App. 231, 233-34, 562 P.2d 659 (1977).[1]

---

[1] On the other hand, guilty knowledge is not an element of unlawful possession with intent to manufacture or deliver because the elements already include the requisite mental state of intent. *State v. Sims*, 119 Wn.2d 138, 142, 829 P.2d 1075 (1992).

Hence, the Washington Pattern Criminal Instruction for unlawful manufacture of a controlled substance includes a knowledge element, i.e., that the defendant knew that the substance being manufactured was a controlled substance. 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 50.11, at 650 (2d ed. 1994) (WPIC). Here, instruction 7 comported with WPIC 50.11 by requiring the State to prove Ms. Warnick manufactured a controlled substance that she knew was methamphetamine.

Ms. Warnick nevertheless extends *Wallway* to additionally require as an essential element that she knew methamphetamine was a controlled substance. In *Wallway*, the issue was whether the information alleging the defendant did *"unlawfully manufacture a controlled substance, to-wit: Marijuana"* was defective because it did not specify the mens rea element necessary to commit unlawful manufacture of a controlled substance. *Wallway*, 72 Wn. App. at 411. The court stated, "For purposes of this case, we assume that guilty knowledge is an element of the crime of unlawful manufacture of a controlled substance." *Id.* at 413. Applying the liberal standard for reviewing the sufficiency of a charging document challenged for the first time on appeal, the court held that the language alleging the defendant "unlawfully manufacture[d]" a controlled substance is sufficient to charge the guilty knowledge element of the crime. *Id.*

Here, the information alleged Ms. Warnick "did knowingly manufacture a controlled substance, to-wit: Methamphetamine." CP at 1. Thus, the problem in *Wallway* is not present here. And in no way does *Wallway* require any more of a knowledge element than was included in instruction 7.

But further commentary in *Wallway* highlights the weakness of Ms. Warnick's argument:

What we have said is not refuted by the fact that it is possible to conceive of a case in which a person might cultivate, grow or harvest marijuana without knowledge of its identity. *Commonly*, manufacture of marijuana involves knowledge of

the identity of the plant being cultivated. *Rarely*, it might not. Applying *Kjorsvik*'s[2] liberal standard of review, however, we think that an ordinary accused reading a criminal information would contemplate the common situation, not the rare one, and that he or she therefore would be on notice that both manufacture and knowledge were being alleged.

*Wallway*, 72 Wn. App. at 413-14 (footnote omitted).

Consistent with this reasoning, the structure of WPIC 50.11 suggests the argument now made by Ms. Warnick might be appropriate in a given circumstance. Element (2) of the pattern instruction reads as follows: "That the defendant knew that the substance manufactured was [a controlled substance] [name of substance]." WPIC 50.11. The note on use following the instruction states that the bracketed material should be used as applicable. WPIC 50.11 (Note on Use).

The first bracketed phrase might be appropriate in a rare case, such as when a defendant admits to unwitting manufacture of what subsequently turned out to be a controlled substance (growing marijuana despite believing the seeds were for a legal plant). In other words, if a defendant claims naive belief that he or she was making a legal substance (or legally mixing certain chemicals that happen to be methamphetamine precursors) but was accused of actually concocting methamphetamine, it might be prudent to utilize the entire pattern element (2) of WPIC 50.11, i.e., "That the defendant knew that the substance manufactured was a controlled substance, methamphetamine."

But Ms. Warnick's defense was that she had no involvement in any manufacturing activities, not that she knowingly manufactured something she did not know was a controlled substance. Ms. Warnick testified that she came to the garage to discuss her jet ski. And she contends the State's witnesses, who unjustly incriminated her, should be disbelieved. Thus, given her clear theory of the case, this was not a situation calling for use of the first bracketed phrase of element (2) of WPIC 50.11.

---

[2] *State v. Kjorsvik*, 117 Wn.2d 93, 102-08, 812 P.2d 86 (1991).

■ Jury instructions are sufficient when they allow the parties to argue their theory of the case, do not mislead the jury, and properly state the applicable law. *State v. Tili*, 139 Wn.2d 107, 126, 985 P.2d 365 (1999). Such is the case here.

Instruction 7 correctly states the law because it required the jury to find that Ms. Warnick knew the identity of the substance being manufactured in the garage. When that instruction is read together with instruction 9 (defining manufacture), instruction 10 (stating that methamphetamine is a controlled substance), instruction 6 (stating it is a crime for any person to manufacture a controlled substance that the person knows to be a controlled substance), and instruction 11 (standard instruction defining knowledge), it is clear that Ms. Warnick could argue her theory of the case on the instructions given. As the State contends, any further element instruction would be redundant and unnecessary. Ms. Warnick's contention fails.

## STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

Ms. Warnick sets out four additional grounds for review. First, Ms. Warnick contends her trial counsel gave her ineffective assistance by failing to (1) adequately prepare for trial because he talked with her only twice, (2) request a trial continuance so she could obtain a lawyer who could adequately prepare her case, (3) call claimed exculpatory witnesses, and (4) file an affidavit of prejudice against the trial judge.

■■ To prevail on her ineffective assistance claim, Ms. Warnick must show that her attorney performed deficiently under prevailing professional norms and that she was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). There is a strong presumption that counsel's performance was reasonable. *See State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987).

■ Ms. Warnick makes only a bare allegation that her counsel failed to sufficiently communicate with her to prepare for trial. She shows no deficient performance in that regard and no error in the court's refusal to grant her motion at the outset of trial for a continuance to substitute a new public defender. Her claim that her lawyer was unprepared because he told the court he would have something else to do if a continuance were granted is taken out of context. Counsel was referring to the heavy caseload from the public defender's office as keeping him busy no matter what—not that he had been unable to perform duties on this case.

■ ■ Generally, a decision to call or not to call a witness is a matter of legitimate trial tactics and will not support a claim of ineffective assistance of counsel. *Thomas*, 109 Wn.2d at 230. This topic was also discussed during colloquy on Ms. Warnick's continuance motion and her counsel expressed that deciding whether to call her requested witnesses was a matter of trial strategy. Ms. Warnick makes no showing now that any of the particular uncalled witnesses she names would have helped her case. Nor does she claim prejudice from any failure by her counsel to file an affidavit of prejudice against the trial judge.

Ms. Warnick makes no showing that her counsel performed deficiently or that she suffered prejudice under the *Strickland* standards.

■ Second, Ms. Warnick claims Mr. Case gave false testimony against her by telling a different story in the police reports than he did at trial. She asks this court to retrieve the police reports and study this claim for her. She also requests that we obtain the transcript from his trial and compare his testimony in the two trials for consistency. The court does not consider arguments that depend upon matters outside the appellate record. Ms. Warnick's remedy is to file a personal restraint petition. *See McFarland*, 127 Wn.2d at 335.

Third, Ms. Warnick contends the prosecutor misrepresented that Mr. Case received nothing in exchange for his testimony against her. But the only evidence in the record is that Mr. Case did not receive anything for his testimony. He testified he just wanted Ms. Warnick held responsible for her actions. Again, if Ms. Warnick has contrary evidence to support her allegation she must raise the claim in a personal restraint petition. *Id.*

 Finally, Ms. Warnick contends the prosecutor said Ms. Warnick did not know enough about the case to testify against Mr. Case in his trial, yet the State prosecuted her using his testimony. She considers this unethical. But she makes no claim that it was in her interests to testify in his trial. And the State's prosecution of her is ultimately justified by the evidence.

Ms. Warnick's conviction is affirmed.

SCHULTHEIS and BROWN, JJ., concur.