IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38484-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL DUANE ETUE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Michael Etue appeals from four convictions, including one for possession of a stolen motor vehicle. He raises several issues on appeal that were not preserved below. We reject Etue's challenge to the sufficiency of the charging information. Under a liberal construction, the information sufficiently charged that Etue knowingly possessed the stolen motor vehicle. Etue also raises two claims of prosecutorial misconduct. We find no misconduct in the prosecutor's explanation for dismissing the charges due to unavailable witnesses. And while the prosecutor misstated the law in closing by suggesting that constructive knowledge was sufficient, the error was not flagrant or ill-intentioned and could have been, and actually was, corrected by proper jury instructions. We affirm.

BACKGROUND

Officer Matthew Miller of the Chewelah Police Department responded to a call reporting a stolen vehicle. Officer Miller found a car matching the description of the reported vehicle. He followed the vehicle and pulled it over.

The vehicle was driven by Etue who was subsequently charged with nine counts, including one count for possession of a stolen motor vehicle. The information for the possession of a stolen motor vehicle charge alleged that Etue "did knowingly possess a stolen motor vehicle." Clerk's Papers (CP) at 1.

The case proceeded to a jury trial. After the State had completed presenting its case in chief, with the jury present, it moved to dismiss five of the charges against Etue "as a result of [the State's] inability to bring those additional witnesses before the jury." Report of Proceedings (RP) at 384. The trial court granted the State's motion and dismissed the charges.

With regard to the charge for possession of a stolen motor vehicle, the trial court instructed the jury that to make a finding of guilt, it must find that Etue acted with knowledge that the vehicle had been stolen. The trial court further instructed the jury regarding the definition of knowledge:

> A person knows or acts knowingly or with knowledge with respect to a fact
> or circumstance when he or she is aware of that fact or circumstance. It is
> not necessary that the person know that the fact or circumstance is defined
> by law as being unlawful or an element of a crime.

2

If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact.

CP at 22.

During closing argument, the State specifically addressed the evidence that established Etue had knowledge that the vehicle was stolen. It stated:

Again, when you determine knowledge, you are able [to] determine what is reasonable in determining knowledge. If [Etue] reasonably should have known there was a problem with this car, then he had knowledge. All of the other elements fall into place and I'll go over those real quickly in just a second. But that's Instruction Number 13 is the one that I'm talking about with regard to knowledge. So, I'd ask that you pay careful attention to that. And in fact, I'll read the second paragraph, so you know what I'm talking about. If a person has information that would lead a reasonable person in the same situation to believe that a fact exists the jury is permitted, but not required to find that he or she acted with knowledge.

RP at 484. The State also noted to the jury that it had earlier dismissed five of the counts because "[the State] can't prove the other charges that were initially charged." RP at 485.

The jury found Etue guilty of all four of the remaining charges, including possession of a stolen motor vehicle. Etue appeals.

ANALYSIS

1.    SUFFICIENCY OF CHARGING INFORMATION

Etue challenges the sufficiency of the charging information for the first time on appeal. He contends that the information failed to provide notice that knowledge that the

3

vehicle was stolen was a necessary element of the crime charged. The State responds that, under a liberal construction of the information, all the necessary elements were included or could be inferred.

This court reviews a defendant's challenge to the sufficiency of a charging document de novo. *State v. Briggs*, 18 Wn. App. 2d 544, 548, 492 P.3d 218 (2021). The charging information must allege each essential element, statutory and otherwise, to apprise the accused of the charges against him or her and to allow for preparation of a defense. *State v. Vangerpen*, 125 Wn.2d 782, 787, 888 P.2d 1177 (1995). The information must do more than merely list the offense, but it need not restate the precise language of the criminal statute. *State v. Nonog*, 169 Wn.2d 220, 226, 237 P.3d 250 (2010). "[I]t is sufficient if words conveying the same meaning and import are used." *State v. Kjorsvik*, 117 Wn.2d 93, 108, 812 P.2d 86 (1991).

Etue did not challenge the sufficiency of the information before a verdict was reached. While a constitutional challenge to the charging document can be raised for the first time on appeal, the late objection changes the level of deference this court applies. *Id.* at 102. "When, as in this case, a charging document is challenged for the first time on appeal, we construe it liberally." *State v. Pry*, 194 Wn.2d 745, 752, 452 P.3d 536 (2019). Under this standard, this court considers the charging document, as a whole, in a common sense manner to determine if the missing element can be inferred through a liberal construction in favor of its validity. *Kjorsvik*, 117 Wn.2d at 110-11.

Under the two-prong test developed by *Kjorsvik*, the first question is whether the essential elements appear in any form or by fair construction can be found. *Id*. at 105. If the information fails to meet the first prong, prejudice is presumed and requires reversal. *State v. Zillyette*, 178 Wn.2d 153, 162, 307 P.3d 712 (2013). The second prong is prejudice. *Kjorsvik*, 117 Wn.2d at 106. If the first prong is met, we consider whether the defendant can show actual prejudice by the language used that caused a lack of notice. *Id*. at 106.

The information charged that Etue "did knowingly possess a stolen motor vehicle" in violation of RCW 9A.56.068(1). CP at 1. The statute the State charged Etue under states that "[a] person is guilty of possession of a stolen vehicle if he or she possess [possesses] a stolen motor vehicle." RCW 9A.56.068(1). Etue argues that the information was insufficient because it failed to allege that he knew the car was stolen— an essential element of the crime of possession of a stolen motor vehicle.

Proving the crime of possession of a stolen motor vehicle requires knowledge. *State v. Level*, 19 Wn. App. 2d 56, 59, 493 P.3d 1230 (2021). In *Level*, the court analyzed the information for possession of a stolen motor vehicle charge to determine whether it had sufficiently apprised the defendant of the knowledge component. *Id*. at 60. In doing so, the court determined that there are two components to the knowledge requirement. *Id.* at 59. A defendant's possession of the motor vehicle must be knowing and the defendant must be acting with knowledge that the motor vehicle was stolen. *Id*.

In this case, under the liberal construction rule, the knowledge element can be fairly imputed to not only the verb but the entire direct object following the verb. "In ordinary English, where a transitive verb has an object, listeners in most contexts assume that an adverb (such as knowingly) that modifies the transitive verb tells the listener how the subject performed the entire action, including the object as set forth in the sentence." *Flores-Figueroa v. United States*, 556 U.S. 646, 650, 129 S. Ct. 1886, 173 L. Ed. 2d 853 (2009).

Similarly, this court should determine that the word knowingly modifies the verb "possess" along with the entire object it follows, "a stolen motor vehicle." CP at 1. As a result, the knowing element should be read as applying to the status of a motor vehicle as stolen along with the actual possession of the vehicle. Accordingly, the information charged communicates all of the essential knowledge elements for possession of a stolen motor vehicle.[1]

---

[1] Etue additionally argues that under *State v. Simon*, 120 Wn.2d 196, 840 P.2d 172 (1992), the mere fact that the word "knowingly" appeared in the charging information is insufficient. However, in *Simon*, the charging information alleged that the defendant "*did knowingly* advance and profit by compelling Bobbie J. Bartol by threat and force to engage in prostitution; and *did* advance and profit from the prostitution of Bobbie Bartol, a person who was less than 18 years old." *Id.* at 197-98 (emphasis added). As the court explained, by simple rules of sentence structure and punctuation, the "knowingly" cannot refer to the second means of committing the crime. *Id.* at 199. This is not the case here.

Etue argues that under *Briggs* this court should determine that the charging information was insufficient. In *Briggs*, the defendant was charged with violating a no contact order. 18 Wn. App. 2d 544. The defendant argued that the charging information, although it alleged that the defendant knew of the no contact order, failed to state that the violation of the no contact order was willful. *Id.* at 550. The court in *Briggs* agreed with the defendant. *Id.* at 555. The charging information stated:

> That defendant, on or about the 18th day of May, 2019, *with knowledge that he was the subject of a . . . no contact order* pursuant to [chapter 10.99 RCW or other specified statutes] issued by the Superior Court of Snohomish County, under cause no. 14-1-00408-1, on August 11, 2014, protecting [F.S.], and said order being valid and in effect, *did violate the order*.

*Id*. at 551. Unlike here, the only knowledge component in the charging information in *Briggs* was contained in a dependent clause. *Id*. at 553. Although the dependent clause modified the verb "did violate," it only did so to show that the defendant knew he was the subject of the no contact order when he violated it. It was not possible to construe the charging information in *Briggs* to read that the defendant both knew of the no contact order and knew that he was violating it. Accordingly, *Briggs* does not support Etue's position.

Etue also argues that the charging information was insufficient under *State v. Khlee*, 106 Wn. App. 21, 22 P.3d 1264 (2001). However, *Khlee* is distinguishable because the defendant challenged the sufficiency of the information prior to the verdict.

7

*Id*. at 23.  Accordingly, in the court's review, it strictly construed the language of the information.  *Id.*  Under the strict construction interpretation, the court did "'not attempt to find the missing elements by construing the wording of the document.'"  *Id.* (quoting *State v. Johnstone*, 96 Wn. App. 839, 844, 982 P.2d 119 (1999)).  Further, the court determined that the charging information must not contain language that was "'inartful or vague.'"  *Id.* (quoting *State v. Johnson*, 119 Wn.2d 143, 149-50, 829 P.2d 1078 (1992)).  As explained above, this court should apply a much more liberal construction to the language of the charging information.

The charging information was sufficient because, under a liberal construction, it adequately conveyed the essential knowledge elements for possession of a stolen motor vehicle.  Etue does not otherwise contend that the constitutionally sufficient language caused prejudice.

2.      PROSECUTORIAL MISCONDUCT

Next, Etue argues that the prosecutor committed misconduct in closing arguments when he misstated the law and also when he improperly commented on the motion to dismiss certain charges.  We disagree.

A defendant claiming prosecutorial misconduct must show the prosecutor's conduct was improper and prejudicial.  *State v. Walker*, 182 Wn.2d 463, 477, 341 P.3d 976 (2015).  "And where a defendant raises the issue for the first time on appeal, the defendant must also show 'that the misconduct was so flagrant and ill intentioned that an

8

instruction would not have cured the prejudice.'" *Id.* at 477-78 (quoting *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012)). In making this determination, the focus is not on the subjective intent of the prosecutor "but instead on whether the defendant received a fair trial in light of the prejudice caused by the violation of existing prosecutorial standards and whether that prejudice could have been cured with a timely objection." *Walker*, 182 Wn.2d at 478.

A prosecutor's misstatement of the law constitutes misconduct. *State v. Allen*, 182 Wn.2d 364, 373, 341 P.3d 268 (2015). A prosecutor also commits misconduct when they rely on evidence not admitted at trial. *State v. Dhaliwal*, 150 Wn.2d 559, 577, 79 P.3d 432 (2003). The prejudicial effect of the prosecutor's comments is reviewed in the context of the State's total argument. *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006).

Etue alleges two incidents of prosecutorial misconduct. First, he argues that the prosecutor misstated the law when he told the jury that Etue should be convicted if he reasonably should have known the car was stolen.

The State had the burden of proving that Etue knowingly possessed the stolen vehicle, which required proof of actual knowledge. *See Level*, 19 Wn. App. 2d at 59. During closing argument, in discussing with the jury the evidence that supported the fact that Etue knew the car was stolen, the State said: "If [Etue] reasonably should have known there was a problem with this car, then he had knowledge." RP at 484. This was

9

a misstatement of the law because the law requires actual knowledge and not just constructive knowledge. However, a couple of sentences later, to explain how this evidence applied here, the prosecutor read from the jury instructions: "If a person has information that would lead a reasonable person in the same situation to believe that a fact exists[,] the jury is permitted, but not required to find that he or she acted with knowledge." RP at 484.

Although the prosecutor's statement on its own was a misstatement of the law, viewed in context of his total argument, it was not so flagrant and ill-intentioned that an instruction would not have cured it. The prosecutor was clearly trying to communicate to the jury that it could find actual knowledge from circumstantial evidence. This is demonstrated by the fact that the prosecutor, subsequent to the improper statement, read the instruction that clarified to the jury that it could, *but was not required to*, infer knowledge from such evidence. This misstatement was minor and would have been curable by an instruction had Etue objected.

In fact, the jury instruction correctly stated the law and an explanation of the definition of knowledge was given and read by the prosecutor. Absent evidence to the contrary, this court should presume the jury followed that instruction. *State v. Kalebaugh*, 183 Wn.2d 578, 586, 355 P.3d 253 (2015) ("Jurors are presumed to follow the court's instructions."). Etue fails to demonstrate that a curative instruction would not

have cured any prejudicial effect on the jury. *State v. Crossguns*, 199 Wn.2d 282, 299, 505 P.3d 529 (2022).

We note that the difference between constructive knowledge and actual knowledge proved by circumstantial evidence is subtle. The prosecutor in this case is not the first one to confuse the differences. While the language included in the *Washington Pattern Jury Instruction* correctly defines the law, we encourage the Washington Pattern Instructions Committee to consider modifications that will make this distinction more apparent.

In Etue's second claim of prosecutorial misconduct, he argues that the prosecutor committed misconduct by referring to evidence outside the record that suggested Etue's guilt on dismissed charges. While the jury was present, the prosecutor moved to dismiss five of the charges "[a]s a result of [the State's] inability to bring those additional witnesses before the jury." RP at 384. Etue argues that this statement improperly suggested he was guilty of additional crimes and that there were additional grounds for finding him guilty in front of the jury.

We do not agree with Etue that the prosecutor's comment amounted to misconduct. The prosecutor's motion included a brief explanation, the unavailability of witnesses, for why the charges were being dismissed. The prosecutor made absolutely no mention of any facts the witnesses would have testified to or any additional evidence that would have been relied on to support the dismissed charges. The request to dismiss the

charges was based on the fact that the State could not meet its burden. This is further emphasized in the prosecutor's own statement in closing argument that the jury was only considering four charges because "[the State] can't prove the other charges that were initially charged." RP at 485. As a result, Etue has failed to show an improper statement, let alone anything so flagrant and ill-intentioned that an instruction could not have remedied it.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Fearing, J.

_____
Siddoway, C.J.