923 P.2d 694 (1996)
130 Wash.2d 392
The STATE of Washington, Respondent,
v.
Timothy D. CRONIN, Appellant.
The STATE of Washington, Respondent,
v.
Michael K. ROBERTS, Appellant.
Nos. 63651-6, 63724-5.
Supreme Court of Washington, En Banc.
Argued June 26, 1996.
Decided September 26, 1996.
Peter T. Connick, Seattle, Steinborn & Associates, Nicholas C. Holt, Seattle, Sharon Blackford, Seattle, for other parties.
Todd M. Gruenhagen, Gregory L. Girard, Seattle, for appellant Timothy D. Cronin.
Norm Maleng, King County Prosecutor, Brenda K. Pahmeier, Deputy, Seattle, for respondent.
Society of counsel representing accused persons Terry Mulligan, Kern Clevin, Dave Wieck, Seattle, for appellant Michael K. Roberts.
ALEXANDER, Justice.
The issue before us is whether the King County Superior Court correctly determined that a notice of special sentencing was properly "served" on attorneys for both Michael Roberts and Timothy Cronin when a copy of the notice was delivered to the office of the attorneys for each defendant. Consistent with our recent decision in State v. Clark, 129 Wash.2d 805, 920 P.2d 187 (1996), we conclude that the trial court did not err in *695 holding that the notices were properly served. We, therefore, affirm the trial court.
On May 17, 1994, Timothy Cronin and Michael Roberts were together charged in King County Superior Court with aggravated first degree murder. Soon after charges were filed, Gregory Girard and Todd Gruenhagen of Associated Counsel for the Accused (ACA) were appointed to represent Cronin, and Terry Mulligan, Kern Clevin, and Dave Wieck of the Society of Counsel Representing Accused Persons (SCRAP) were appointed to represent Roberts. Both defendants were arraigned on November 2, 1994.
On November 28, 1994, pursuant to a stipulation for an extension of time for filing and serving a notice for special sentencing proceedings to determine whether the death penalty should be imposed, the trial court entered orders giving the State until January 17, 1995 to file such a notice against Cronin and Roberts. On January 13, 1995, King County Prosecutor Norm Maleng signed and caused to be filed a notice indicating that the death penalty would be sought for both Cronin and Roberts.
On that same day, the senior deputy prosecutor assigned to the case engaged the services of Pacific Northwest Process to serve a copy of the notice on the attorneys for each defendant. Ken Butera, a process server employed by Pacific Northwest Process, delivered a notice on that date to the office of ACA, as well as to the office of SCRAP. Butera indicated in an affidavit that when he told the receptionist at ACA that he had "documents" for attorneys Girard and Gruenhagen, "[t]he receptionist accepted the notice of special sentencing proceeding and stamped the messenger form and an extra copy with the ACA stamp confirming the receipt of the document." Clerk's Papers at 23-24. Attorney Girard concedes that on that same date he received a copy of the notice in his office mailbox and that it bore a stamp indicating that it had been received by ACA on that date. Butera also indicated in another affidavit that when he told the receptionist at SCRAP that he had "documents" for attorneys Mulligan, Cleven, and Wieck, "[t]he receptionist accepted the notice of special sentencing proceeding and stamped the messenger form and an extra copy with the SCRAP stamp confirming the receipt of the document." Clerk's Papers at 28-29.
On July 20, 1995, the trial court entered an order severing the defendants for trial. On October 26, 1995, Cronin's counsel moved to strike the notice of special sentencing proceeding. On November 3, 1995, counsel for Roberts made a similar motion.
At a joint hearing on their motions, Cronin and Roberts both claimed that their attorneys had not been properly served with the notice of special sentencing as required by RCW 10.95.040. In addition, Roberts's attorney, Nicholas Holt,[1] in making an offer of proof, stated that SCRAP's receptionist was on vacation on January 13, 1995. He suggested that the notice delivered to SCRAP's office might, therefore, have been "selfstamped" by the process server. Verbatim Report of Proceedings (Nov. 17, 1995) at 20. He conceded, however, that the notice was discovered at SCRAP's office on that date and was brought to the attention of one of Roberts's then attorneys, Kevin Cleven. The trial court denied the motions, concluding that the attorneys for Roberts and Cronin had both been properly served with the notice.
The defendants each sought discretionary review at Division One of the Court of Appeals of the trial court's decision. That court certified both cases to this court. We accepted review and consolidated the cases for hearing.
Cronin and Roberts each contend that the trial court erred when it denied their motions to strike the notice of special sentencing proceedings for what they claimed was improper service of the notices. RCW 10.95.040 governs the filing and service of such notices. It provides, in pertinent part, as follows:
The notice of special sentencing proceeding shall be filed and served on the defendant or the defendant's attorney within thirty days after the defendant's arraignment upon the charge of aggravated first *696 degree murder unless the court, for good cause shown, extends or reopens the period for filing and service of the notice.
RCW 10.95.040(2). If the notice "is not filed and served as provided in this section, the prosecuting attorney may not request the death penalty." RCW 10.95.040(3). Because the notice was timely filed, but not served on either defendant, the sole issue before us is whether the notices were served on the attorneys for Cronin and Roberts by a method of service sufficient under RCW 10.95.040.
Cronin and Roberts both contend that in order to effect service on their attorneys under RCW 10.95.040, the prosecutor must obtain personal "hand-to-hand" service of the notice on the attorney it is seeking to serve. They urge upon us the notion that serving a notice of special sentencing proceeding is to be accomplished in the same manner as serving process to initiate a civil lawsuit. They point to the statute governing service of process in civil litigation, which provides that a summons must be served "personally, or by leaving a copy ... at the house of his usual abode with some person of suitable age and discretion then resident therein." RCW 4.28.080(15).
The State, on the other hand, contends that attorneys may be served with the notice in the manner set forth in CR 5, a rule governing service in civil cases of pleadings and other papers, including notices, following service of the original complaint. That rule should have application here, they argue, because serving a notice of special sentencing proceeding is more akin to serving a notice in a civil case than it is to serving a summons to commence a civil suit.
The notice of special sentencing proceeding is a unique document. Although RCW 10.95.040(2) provides that it is to be "served," the manner in which that service is to be accomplished is not set forth in that statute or any other. Faced with this ambiguity in the statute, our next resort is to the criminal rules for superior court. Unfortunately, those rules give us no direction regarding the manner in which service of the notice is to be obtained. The only criminal rule that, arguably, bears on the issue is CrR 8.4, which provides that "CR 5 shall govern service and filing of written motions (except those heard ex parte) in criminal causes." That rule is consistent with the general proposition that when the criminal rules are silent, "civil rules can be instructive." State v. Gonzalez, 110 Wash.2d 738, 744, 757 P.2d 925 (1988).
Significantly, CR 5, the civil rule referred to in CrR 8.4, indicates that when "service is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney unless service upon the party himself is ordered by the court." CR 5(b)(1). The rule goes on to say that service on an attorney may be effected by "leaving it at his [the attorney's] office with his clerk or other person in charge thereof; or, if there is no one in charge, leaving it in a conspicuous place therein." CR 5(b)(1).
In view of the fact that the statute requiring service of the notice of special sentencing proceeding is silent as to the manner of service, as are the criminal rules, we believe that it is appropriate to look to CR 5 for direction as to the manner of service of such a notice. We reach this conclusion because, like the trial court, we find ourselves in agreement with the State that serving a notice in criminal proceedings is more analogous to serving a notice in a civil case than it is to serving process in order to invoke the jurisdiction of the court in such a case. Significantly, our decision is consistent with our very recent ruling in State v. Clark, ___ Wash.2d at ___, 920 P.2d at 191 (1996) where we said that "CR 5 provides the best guidance to the interpretation of RCW 10.95.090, as it pertains specifically to service of notices on counsel after commencement of an action."[2]
Having concluded that it is appropriate to look to CR 5 to interpret the meaning of the term "served," we quickly add that there is some merit to the arguments set forth by *697 Cronin and Roberts that a notice as significant as a notice of special sentencing proceeding should be personally served on a defendant or his counsel. There is, however, more merit to the State's argument that personal hand-to-hand service of the notice is not necessary where the trial court has already obtained jurisdiction over a defendant and that defendant is represented by counsel. We believe that logic supports the argument that the requirements for obtaining service should be less rigid in cases where jurisdiction has previously been acquired than in cases where the court has not previously acquired jurisdiction.
Here, of course, the filing of a notice of special sentencing proceeding did not constitute an amendment of the charge against Cronin and Roberts. Neither did it invoke the trial court's jurisdiction over these defendants, the King County Superior Court having acquired subject matter jurisdiction at the commencement of the action (see State v. Sponburgh, 84 Wash.2d 203, 206, 525 P.2d 238 (1974)) and personal jurisdiction when Cronin and Roberts appeared at their arraignment. State v. Melvern, 32 Wash. 7, 12, 72 P. 489 (1903). The court's jurisdiction over both Cronin and Roberts was, in sum, unaffected by the filing of the notice and continued regardless of whether or not the State decided to seek the death penalty.
The defendants, citing RCW 10.95.010, argue that CR 5 should have no application here because, according to that statute, no civil rule may supersede or alter any of the provisions of chapter 10.95. We do not quarrel with that assertion, noting only, as we did in Clark, that our conclusion that CR 5 governs the manner of service of the notice of special proceeding does not bring CR 5 into collision with 10.95.040. Rather, we are employing it only for the purpose of giving meaning to the term "served," which is undefined in the statute.
Cronin and Roberts also assert that if the Legislature had intended to allow service by means other than personal, hand-to-hand service, it would have indicated as much in the statute. Because RCW 10.95.040 does not indicate that the State may effect service on the attorney by delivering the notice to the office of the defense counsel, they argue, personal service is required. We disagree. We think, rather, that it is more significant that the Legislature did not include the word "personally" in RCW 10.95.040 as it did in RCW 4.28.080. Where the Legislature uses certain statutory language in one instance, and different language in another, there is a difference in legislative intent. United Parcel Serv., Inc. v. Department of Revenue, 102 Wash.2d 355, 362, 687 P.2d 186 (1984). As we observed in Clark, if the Legislature had intended that a notice of special sentencing proceeding be personally served, it would have indicated as much. The fact that it did not suggests that service in accordance with CR 5 is sufficient.
Cronin and Roberts both call our attention to the fact that in the 1996 regular session of the Washington State Legislature, House Bill 2668 was introduced. That bill, if passed, would have permitted the State to serve the notice of special sentencing by any means likely to provide notice to the defendant or the defendant's attorney. The bill did not achieve passage. The defendants assert that the Legislature's failure to pass this proposed revision to RCW 10.95.040 is an endorsement of our holdings in State v. Dearbone, 125 Wash.2d 173, 883 P.2d 303 (1994) and State v. Luvene, 127 Wash.2d 690, 903 P.2d 960 (1995) to the effect that strict compliance with RCW 10.95.040 is required.
As a general principle, we are loathe to ascribe any meaning to the Legislature's failure to pass a bill into law. Spokane County Health Dist. v. Brockett, 120 Wash.2d 140, 839 P.2d 324 (1992). Moreover, we were not called upon in either Dearbone or Luvene to determine what constitutes service under RCW 10.95.040. In both cases, unlike the instant, we were concerned only with timeliness of the State's action. Consequently, it is pure speculation that the Legislature's failure to pass HB 2668 following our rulings in those two cases was an expression of the Legislature's view on the issues before us.
In the final analysis, the purpose of requiring a notice of special sentencing proceeding to be served on a defendant or his *698 attorney is to inform them that the death penalty will be sought and may be imposed if the defendant is convicted of the charged crime. The Legislature could have required that this notice be served only on a defendant and that such service be personal. It did not do so. Rather, it allowed for substituted service on an attorney for a defendant. While service of the notice on the defendant's attorney in the manner prescribed in CR 5 is a substantial deviation from the rigid service requirements set forth in RCW 4.28.080, it is calculated to give notice to a defendant over whom the trial court already has jurisdiction and who is represented by an attorney.
Having concluded that CR 5 governs, we must next determine if service was had in accordance with the that rule. In that regard, it is not disputed that a notice was delivered to the office of the attorneys for Cronin and Roberts, respectively. Furthermore, each defendant concedes that a notice came into the possession of his attorneys and was stamped received by a receptionist at those offices. While there is a dispute as to whether the receptionist at SCRAP actually stamped and received the notice intended for Roberts's attorney, that factual dispute is of no significance because, at the very least, the notice was delivered to SCRAP's office and was left in a conspicuous place. Under CR 5, that is proper service.
In summary, we reaffirm our holding in State v. Clark to the effect that the manner of serving a notice of special sentencing proceeding is governed by CR 5. Because the notices were delivered to offices of the attorneys for both Cronin and Roberts in accordance with that rule and within the time period set forth in RCW 10.95.040, they were properly served.
Affirmed.
DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, TALMADGE and SANDERS, JJ., concur.
NOTES
[1] Roberts is now represented by attorneys Nicholas Holt and Peter Connick, also of SCRAP.
[2] In Clark, the notice was not delivered to the office of Clark's attorney. Rather, according to a long-standing agreement between the Snohomish County Prosecutor's Office and the public defender, it was left in a designated box and was picked up by a member of the public defender's staff who stamped it "received" and delivered it to Clark's attorney.