22 P.3d 269 (2001)
105 Wash.App. 950
STATE of Washington, Respondent,
v.
Dominique FRANKS, Appellant.
No. 43678-3-I.
Court of Appeals of Washington, Division 1.
April 23, 2001.
*271 Catherine Glinski, James R. Dixon, Nielsen, Broman & Assoc. PLLC, Seattle, for Appellant.
Andrew J. King-Ries, Andrea Ruth Vitalich, King County Deputy Pros. Attys., Seattle, for Respondent.
*270 BECKER, Acting Chief Justice.
The State intended to charge appellant Dominique Franks with robbery, and filed an information naming her in the caption. But the charging language accused a different person. While the flaw in the information did not deprive the court of subject matter jurisdiction, it did deprive the appellant of her right to be informed of the charge she had to meet. Because that essential fact cannot be found in the charging document even by liberal construction, the appellant is entitled to a judgment of dismissal without prejudice.
According to testimony presented by the State, two juveniles approached Susan English as she was walking home from work late one night in June, 1998. They demanded her money and backpack. When she refused, they attacked her. She screamed, and they fled. Minutes later, two police officers arrived. Upon hearing the description of the assailants, the officers suspected Dominique Franks and her sister, Malia Franks, who lived nearby. They went to the Franks residence and asked for Dominique. Malia came to the door and introduced herself as Dominique. English identified Malia as one of the two girls who had attacked her. After the police arrested Malia, the actual Dominique emerged from the house and told the officers that she was the culprit and they had arrested the wrong person. The police then arrested Dominique.
The State filed separate informations in juvenile court. One of the informations named Dominique in the caption: "THE STATE OF WASHINGTON, Plaintiff, v. DOMINIQUE DANETTE FRANKS, B.D. 08-10-81, Respondent." But the charging language in that information accused only Malia Franks of committing the crime:
I, Norm Maleng, Prosecuting Attorney for King County in the name and by the authority of the State of Washington, do accuse MALIA MYNETTE FRANKS of the crime of Robbery in the Second Degree, committed as follows:
That the respondent MALIA MYNETTE FRANKS in King County, Washington, together with another, on or about 5 June 1998, did unlawfully and with intent to commit theft take personal property of another, from the person and in the presence of Susan English, against her will, by *272 the use or threatened use of immediate force, violence and fear of injury to such person or her property and the person or property of another[.]
The trial court joined the two cases. The sisters appeared through separate counsel. Each of them defended against the charge of robbery in the second degree. Malia presented an alibi defense. Dominique defended primarily on the ground that the victim had been unable to positively identify her. The court found Malia not guilty, and found Dominique guilty as charged.
Dominique raised no objection below to the information. On appeal, she contends that the finding of guilt must be reversed. Relying on State v. Corrado, 78 Wash.App. 612, 898 P.2d 860 (1995), she contends that the State's failure to name her in the charging portion of the information means that the court lacked subject matter jurisdiction. The State, on the other hand, contends that the flaw in the information must be analyzed as a potential due process problem under State v. Kjorsvik, 117 Wash.2d 93, 812 P.2d 86 (1991), rather than as a problem with the court's jurisdiction.[1]
"Jurisdiction is the power of the court to hear and determine the class of action to which a case belongs." State v. Buchanan, 138 Wash.2d 186, 196, 978 P.2d 1070 (1999). The term "subject matter jurisdiction" refers to the authority of a court or tribunal to adjudicate a particular type of controversy, not a particular case. Marley v. Department of Labor & Industries, 125 Wash.2d 533, 539, 886 P.2d 189 (1994). The superior court in this case has subject matter jurisdiction because the Washington State Constitution grants superior courts subject matter jurisdiction in felony cases, and the juvenile court is a division of the superior court. Wash. Const. Art. 4, § 6; State v. Werner, 129 Wash.2d 485, 492, 918 P.2d 916 (1996).
According to State v. Corrado, a superior court "acquires" subject matter jurisdiction over a criminal action only from the time when an indictment or information is filed. Corrado, 78 Wash.App. at 615, 898 P.2d 860. In Corrado, the State filed an information against Corrado for second-degree murder. At Corrado's first trial, the State was unable to locate a key witness. The trial court granted the State's motion to dismiss the information without prejudice. The State later rearraigned Corrado but neglected to file a new information. A second trial proceeded, the jury convicted Corrado, and the court entered judgment. Corrado argued on appeal that the State's failure to file a new information deprived the court of jurisdiction. The Court of Appeals held the conviction to be a nullity on the basis that the court "lost" subject matter jurisdiction when the original information was dismissed and never "reacquired" jurisdiction because the State did not file another information. Corrado, 78 Wash.App. at 615-16, 898 P.2d 860.
While the result in Corrado may be correct on some other basis, the analysis is flawed in its assumption that a superior court must "acquire" subject matter jurisdiction in each particular case, and that the court may "lose" such jurisdiction due to procedural error. As the Supreme Court made clear in Marley v. Department of Labor & Industries, subject matter jurisdiction is not temporal, and its existence is not dependent upon compliance with procedural rules:
A tribunal lacks subject matter jurisdiction when it attempts to decide a type of controversy over which it has no authority to adjudicate.
[T]he focus must be on the words "type of controversy." If the type of controversy is within the subject matter jurisdiction, then all other defects or errors go to something other than subject matter jurisdiction.
Marley, 125 Wash.2d at 539, 886 P.2d 189 (quoting Robert J. Martineau, Subject Matter *273 Jurisdiction as a New Issue on Appeal: Reining In an Unruly Horse, 1988 B.Y.U.L.Rev. 1, 28.)
The Corrado court cited State v. Sponburgh, 84 Wash.2d 203, 206, 525 P.2d 238 (1974) for the proposition that "a superior court acquires subject matter jurisdiction only `[f]rom the time an action is commenced'." Corrado, 78 Wash.App. at 615, 898 P.2d 860. Sponburgh was cited for the same proposition in State v. Cronin, 130 Wash.2d 392, 398, 923 P.2d 694 (1996).[2] But Sponburgh does not actually discuss the superior court's "subject matter jurisdiction." Rather, it merely uses the term "jurisdiction." Sponburgh, 84 Wash.2d at 206, 525 P.2d 238. In Sponburgh, the court rejected the defendant's argument that a trial court lacked "jurisdiction" to enter an order releasing grand jury evidence that had been previously sealed pursuant to an order that was issued along with an order dismissing the case against the defendant. The Supreme Court held that the trial court had retained "jurisdiction" to modify the protective order despite the dismissal of the indictment. Sponburgh, 84 Wash.2d at 206, 525 P.2d 238. The Sponburgh court wrote:
From the time an action is commenced, the superior court acquires jurisdiction. Const. art. 4, § 1 et seq.; Swan v. Landgren, 6 Wash.App. 713, 495 P.2d 1044 (1972); Daniel v. Daniel, 116 Wash. 82, 198 P. 728, 27 A.L.R. 177 (1921).
Sponburgh, 84 Wash.2d at 206, 525 P.2d 238.
The above passage and the authorities cited therein address jurisdiction, but they do not address "subject matter jurisdiction." In Swan v. Landgren, 6 Wash.App. 713, 495 P.2d 1044 (1972), the court was confronted with the procedural issue of when a trial court's authority to control its own trial calendar begins. The Swan court held that a court acquires "jurisdiction," including the ability to control its calendar, when a complaint is filed or a summons is served. Swan, 6 Wash.App. at 715-16, 495 P.2d 1044. Swan noted, in passing, that "Article 4 of the Washington State Constitution defines the jurisdiction of our courts." Swan, 6 Wash. App. at 715, 495 P.2d 1044. Likewise, Daniel v. Daniel, 116 Wash. 82, 198 P. 728 (1921), does not address the issue of how a superior court "acquires" any type of jurisdiction. Daniel notes, in dicta, that Const. art. 4, § 6 "defines the jurisdiction of the superior courts," but also states that this provision does not purport to regulate or control the manner in which courts exercise their "jurisdiction." Daniel, 116 Wash. at 84, 198 P. 728.
In sum, Sponburgh does not support the interpretation of "subject matter jurisdiction" for which it is relied upon in Corrado and cited in dicta in Cronin. Those cases have confused the superior courts' exercise of jurisdiction over particular defendants with the courts' inherent jurisdiction over the subject matter. As the Supreme Court stated in Marley, "The term `subject matter jurisdiction' is often confused with a court's `authority' to rule in a particular manner. This has led to improvident and inconsistent use of the term." Marley, 125 Wash.2d at 539, 886 P.2d 189 (quoting In re Major, 71 Wash.App. 531, 534, 859 P.2d 1262 (1993)).
The Supreme Court's discussion of subject matter jurisdiction in Marley is consistent with its earlier rejection, in Kjorsvik, of the argument that a trial court lacks subject matter jurisdiction over a case commenced by a deficient information. An information that fails to state the essential elements of the charged crime raises an issue that can be considered on appeal despite the lack of an objection below. But the issue raised is lack of due process, not lack of jurisdiction. The Court declined to "view a constitutional challenge to a charging document as an issue regarding the power of the *274 trial court to act." Kjorsvik, 117 Wash.2d at 107, 812 P.2d 86.
Superior courts do not "acquire" or "lose" their subject matter jurisdiction over juvenile felony cases based upon procedural events and errors in those particular cases. Here, there is no question that the superior court had the power to act in this juvenile felony case, and therefore there is no issue as to subject jurisdiction. The only question is whether the charging document adequately informed Dominique Franks of the charges she had to prepare to defend against.
When a defendant challenges the charging document for the first time on appeal, the appellate court must liberally construe all of the information in the document in favor of validity. Kjorsvik, 117 Wash.2d at 102, 812 P.2d 86. The test to determine the sufficiency of a charging document under Kjorsvik has two prongs: "(1) do the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if so, (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language which caused a lack of notice?" Kjorsvik, 117 Wash.2d at 105-106, 812 P.2d 86.
Applying the first prong of the Kjorsvik test, the court looks at the face of the document only. The information must be written in such a manner as to enable persons of common understanding to know what is intended. State v. Simon, 120 Wash.2d 196, 199, 840 P.2d 172 (1992); Kjorsvik, 117 Wash.2d at 110-11, 812 P.2d 86; RCW 10.37.050(6). If the first prong is satisfied, the court in applying the second prong of the test "may look beyond the face of the charging document to determine if the accused actually received notice of the charges he or she must have been prepared to defend against." Kjorsvik, 117 Wash.2d at 106, 812 P.2d 86.
Dominique Franks does not show actual prejudice, as the second prong would require. She appeared in court and mounted a defense against the charge of robbery. But we do not reach the second prong if, upon scrutiny of the document under the first prong, the necessary elements are not found or fairly implied. State v. McCarty, 140 Wash.2d 420, 425, 998 P.2d 296 (2000). In that case, prejudice is presumed.
This court has held that the correct spelling of a defendant's name is not a necessary element. State v. Flett, 98 Wash.App. 799, 803, 992 P.2d 1028, review denied, 141 Wash.2d 1002, 10 P.3d 404 (2000). In Flett, the information charged Gary Flett, Jr. with first-degree assault. At the arraignment and trial, the defendant stated his name as Gary Flett, Sr. On appeal, he unsuccessfully sought reversal of his conviction on the basis that the information should have referred to him as Gary Flett, Sr. The court held that the spelling of his name was not an essential element to be proved. Flett, 98 Wash.App. at 803, 992 P.2d 1028. See also State v. Passila, 117 Wash. 295, 201 P. 295 (1921) (confusion as to the proper spelling of difficult names was not cause for dismissal).
The problem in this case, however, concerns the identity of the person charged with the crime, not the spelling of her name. The identity of the person charged is just as important and essential as the other requirements of the information, including the title of the action and the statement of the acts constituting the crime. State v. Royse, 66 Wash.2d 552, 557, 403 P.2d 838 (1965). Identity of the person charged is a necessary fact because the primary purpose of the charging document is to inform the defendant of the nature of the accusations brought against her. See Wash. Const., article 1 § 22 (a person accused of a crime has the right "to demand the nature and cause of the accusation against him"); Kjorsvik, 117 Wash.2d at 101, 812 P.2d 86.
The State contends that the information, with Dominique's name appearing only in the caption, adequately advised her that she was being charged with robbery. The use of Malia's name instead of Dominique's in the charging language, according to the State, was clearly a scrivener's error.
If the body of the information leaves a blank where the defendant's name should be, but includes language charging the "defendant" or otherwise relating the charging *275 language to the name in the caption, the information is not invalid. State v. Maldonado, 21 Wash. 653, 59 P. 489 (1899); Port Angeles v. Fisher, 130 Wash. 110, 226 P. 489 (1924). But the information received by Dominique Franks does not leave a blank space in the charging language. Rather, it affirmatively charges a different person, Malia Mynette Franks, with committing the crime.
Persons of common understanding would not know upon reading the information that the State was accusing Dominique Franks of robbery. The caption, "STATE OF WASHINGTON v. DOMINIQUE DANETTE FRANKS," would indicate only that the State was initiating a lawsuit against her. The rest of the document charges Malia Franks with committing the crime. It uses Malia's name twice and does not mention Dominique at all. We are not persuaded by the State's argument that inclusion of the phrase "together with another" can be fairly construed as giving notice to Dominique that she was charged with robbery as Malia's accomplice. Nothing in the context of the statement relates "another" to Dominique.
In short, the defect does not fit within the Kjorsvik rule allowing for "vague" or "inartful" language when an information is challenged for the first time on appeal. Kjorsvik, 117 Wash.2d at 106, 812 P.2d 86. Rather, the defect is a failure to include a necessary fact. The information does not satisfy the first prong of the Kjorsvik test. On its face, the information violated Dominique Franks' constitutional right to be informed of the charges against her.
The proper remedy for a conviction based on a defective information is dismissal without prejudice to the State refiling the information. State v. Markle, 118 Wash.2d 424, 440-41, 823 P.2d 1101 (1992); State v. Anderson, 96 Wash.2d 739, 742, 638 P.2d 1205, cert. denied, 459 U.S. 842, 103 S.Ct. 93, 74 L.Ed.2d 85 (1982).
Accordingly, the judgment is reversed and the case remanded for dismissal of the information without prejudice.
KENNEDY, J., concurs.
BAKER, J. (dissenting).
Dominique Franks has failed to demonstrate that she was actually prejudiced by the State's poor drafting of the Information by which she was charged with robbery. This minor procedural error should not entitle Franks to any relief whatsoever. Contrary to the majority opinion, we are not required to apply State v. Kjorsvik,[1] where a defect in the charging document does not involve the essential elements of the crime.
Franks did not challenge the Information in the trial court. Assuming, arguendo, that the identity of the person charged is an essential element for purposes of the rule in Kjorsvik, both prongs of the Kjorsvik test are satisfied in this case.
Franks' name and status as the person charged appears, however inartfully, in the caption of the Information. Where, as here, the charging document is challenged for the first time on appeal, that is sufficient under the first prong of Kjorsvik. Any concerns raised by the erroneous reference to Franks' sister in the charging language must be addressed by the second prong of Kjorsvik. While it is true that persons of common understanding might be confused as to the identity of the person charged, it is also possible that a person reading the Information would conclude that Franks was the person charged and that the reference to her sister was merely a scrivener's error. Because Franks' identity as the defendant appears in the Information, Franks is not entitled to relief under the second Kjorsvik prong because she has not shown any resulting prejudice. It is clear that Franks knew that she was the defendant, and that she knew she was charged with robbery. And it is undisputed that the charging document informed Franks of what the elements of robbery were.
Nevertheless, I would not analyze this case under Kjorsvik. I would not extend the application of Kjorsvik beyond those cases where the defendant's challenge to the charging document relates to the essential elements of the offense.
*276 In Kjorsvik, the defendant was charged with robbery. The Information did not specifically allege the nonstatutory element of an intent to steal. The defendant argued for the first time on appeal that the Information was insufficient because it omitted the common law element of intent. The court of appeals affirmed. The supreme court granted review to consider, inter alia, the question of "What is the proper standard of review when a challenge to an information is first raised on appeal?"[2]
The primary purpose of the essential elements rule is to give notice to the defendant of the nature of the crime so that he or she may prepare an adequate defense.[3] The Kjorsvik court's willingness to consider a different standard of review, on appeal was based on a recognition that the purpose of the essential elements rule is not necessarily advanced where a charging document is first challenged on appeal.
A different standard of review should be applied when no challenge to the charging document has been raised at or before trial because otherwise the defendant has no incentive to timely make such a challenge, since it might only result in an amendment or a dismissal potentially followed by a refiling of the charge. Applying a more liberal construction on appeal discourages what Professor LaFave has described as `sandbagging'. He explains this as a potential defense practice wherein the defendant recognizes a defect in the charging document but forgoes raising it before trial when a successful objection would usually result only in an amendment of the pleading. (Footnotes omitted).[[4]]
Indeed, the court expressly approved an earlier statement by the court that it would be "intolerable" to reverse an otherwise valid conviction based on a technical defect in the charging document.
Over a decade ago, this court recognized that a different standard of review might well be appropriate when a defendant failed to properly challenge the sufficiency of the charging document before or during trial. In State v. Majors, 94 Wash.2d 354, 358-59, 616 P.2d 1237 (1980) (quoting Keto v. United States, 189 F.2d 247, 251 (8th Cir.1951)), this court stated as follows:
The orderly administration of criminal justice demands that a defendant who is dissatisfied with the form or substance of an indictment or information filed against him shall make that known to the trial court at or before the time when sentence is imposed, ... It would create an intolerable situation if defendants, after conviction, could defer their attacks upon indictments or informations until witnesses had disappeared, statutes of limitation had run, and those charged with the duty of prosecution had died, been replaced, or had lost interest in the cases.[[5]]
After surveying earlier Washington cases and various federal cases, the court determined that a two-pronged test "fairly balances the right of a defendant to proper and timely notice of the accusation against the defendant and the right of the State not to have basically fair convictions overturned on delayed postverdict challenges to the sufficiency of a charging document."[6] The now familiar Kjorsvik test asks:
(1) do the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if so, (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language which caused a lack of notice?[[7]]
Applying the new test, the court held that the essential element of an intent to steal was implicit in the language of the Information that alleged that the defendant took money against the will of the shopkeeper by *277 the use or threatened use of force.[8] Having determined that the first prong of the new test was met, the court then determined that the defendant was not prejudiced by any vague or inartful language in the charging document.[9]
It is unclear why the Kjorsvik court retained the essential elements rule, albeit in a relaxed "liberal construction" form, as the first prong of the Kjorsvik test. The essential elements rulewhether liberally or strictly appliedserves no useful purpose where the issue is raised for the first time on appeal and the defendant is unable to show any resulting prejudice. If the Kjorsvik court were concerned that otherwise fair convictions should not be reversed on mere technicalities, the court should have required the defendant to show actual prejudice in all cases where the issue was not raised until after the verdict.
The Kjorsvik court was apparently persuaded that the essential elements rule had to be retained in some form even where the charging document was first challenged on appeal. It is also possible that the court, consciously or unconsciously, limited itself to the issue as framed by the parties: whether a liberal construction standard should be applied to the essential elements rule where the issue is raised for the first time on appeal. But the constitutional basis, if any, for the first prong of the Kjorsvik test is not clearly stated. The court relied upon Hagner v. United States,[10] without acknowledging that Hagner was only interpreting a federal procedural statute that has no application to a criminal proceeding in a state court.[11]
The resulting two-prong test makes little sense, and it has not worked well in almost a decade of application. Dissenting in favor of retaining strict application of the essential elements rule, Justice Utter noted that the court's new rule did not achieve its stated objective:
The defendant who recognizes the defect prior to trial still has nothing to gain by raising a preverdict challenge. The defendant who honestly does not realize the charging document is defective, however, will be penalized by the higher standard of review. Thus, the majority's rule penalizes the unwary while doing nothing to eliminate the "sandbagging" problem the rule allegedly addresses.[[12]]
Justice Utter also predicted that the court's application of the essential elements rule in the first prong of the new test would render the prejudice prong meaningless.
The majority would have us believe that this prejudice inquiry provides additional protection to the defendant. Yet, in reality, it is difficult to imagine a situation where a court would find that the defendant had actual notice and yet was still prejudiced. If the charging document did not give the defendant notice of an element, then the court never looks at the prejudice question. If the charging document did give the defendant actual notice of all the elements, then how could the defendant ever show prejudice?[[13]]
Ten years of subsequent cases have shown that Justice Utter was correct in predicting that the Kjorsvik test would not achieve its stated purpose.[14] In 12 published opinions applying the Kjorsvik test, Washington appellate courts have reversed otherwise valid convictions based on alleged defects in the charging documents raised for the first time after verdict without any showing of actual prejudice. Conversely, in 30 published opinions our courts have upheld convictions under the first and second Kjorsvik prongs. There appears to be no published opinion in which a conviction has been reversed under *278 the second Kjorsvik prong of actual prejudice.
Although Justice Utter would not agree, it is now apparent that Kjorsvik simply did not go far enough to curtail the application of the essential elements rule where an Information is challenged for the first time on appeal. Once again, the majority reverses an otherwise valid conviction relying on Kjorsvik, even though there has been no showing of any actual prejudice. Until the supreme court decides to overrule Kjorsvik and require a showing of prejudice when the sufficiency of a charging document is not challenged until after verdict, we are bound to apply the Kjorsvik test in those cases where it is argued that the charging document fails to allege the essential elements of the crime. But we are not required to extend the reach of Kjorsvik to a case where the elements of the crime are not at issue. I would affirm.

APPENDIX
A. Convictions reversed under first prong of Kjorsvik test:
State v. McCarty, 140 Wash.2d 420, 998 P.2d 296 (2000).
State v. Simon, 120 Wash.2d 196, 840 P.2d 172 (1992).
City of Auburn v. Brooke, 119 Wash.2d 623, 836 P.2d 212 (1992).
State v. Sutherland, 104 Wash.App. 122, 15 P.3d 1051 (2001).
State v. Gill, 103 Wash.App. 435, 13 P.3d 646 (2000).
State v. Green, 101 Wash.App. 885, 6 P.3d 53 (2000), review denied, 142 Wash.2d 1018, 16 P.3d 1266 (2001).
State v. Tresenriter, 101 Wash.App. 486, 4 P.3d 145 (2000).
State v. Ibsen, 98 Wash.App. 214, 989 P.2d 1184 (1999).
State v. Johnstone, 96 Wash.App. 839, 982 P.2d 119 (1999).
State v. Williamson, 84 Wash.App. 37, 924 P.2d 960 (1996).
State v. Sloan, 79 Wash.App. 553, 903 P.2d 522 (1995).
State v. Kitchen, 61 Wash.App. 915, 812 P.2d 888, review denied, 117 Wash.2d 1019, 818 P.2d 1099 (1991).
B. Convictions affirmed under both prongs of Kjorsvik test:
Personal Restraint of Crabtree, 141 Wash.2d 577, 9 P.3d 814 (2000).
State v. Moavenzadeh, 135 Wash.2d 359, 956 P.2d 1097 (1998).
State v. Tunney, 129 Wash.2d 336, 917 P.2d 95 (1996).
State v. Valdobinos, 122 Wash.2d 270, 858 P.2d 199 (1993).
State v. Davis, 119 Wash.2d 657, 835 P.2d 1039 (1992).
State v. Sims, 119 Wash.2d 138, 829 P.2d 1075 (1992).
State v. Hopper, 118 Wash.2d 151, 822 P.2d 775 (1992).
State v. Grant, 104 Wash.App. 715, 17 P.3d 674 (2001).
State v. Krajeski, 104 Wash.App. 377, 16 P.3d 69, 74 (2001).
State v. Phillips, 98 Wash.App. 936, 991 P.2d 1195 (2000).
State v. Schloredt, 97 Wash.App. 789, 987 P.2d 647 (1999).
State v. Shabel, 95 Wash.App. 469, 976 P.2d 153, review denied, 139 Wash.2d 1006, 989 P.2d 1143 (1999).
City of Seattle v. Norby, 88 Wash.App. 545, 945 P.2d 269 (1997), overruled on other grounds by State v. Robbins, 138 Wash.2d 486, 980 P.2d 725 (1999).
State v. Holland, 77 Wash.App. 420, 891 P.2d 49, review denied, 127 Wash.2d 1008, 898 P.2d 308 (1995).
State v. Arseneau, 75 Wash.App. 747, 879 P.2d 1003 (1994), review denied, 126 Wash.2d 1006, 891 P.2d 38 (1995).
State v. Wallway, 72 Wash.App. 407, 865 P.2d 531 (1994).
State v. Allen, 67 Wash.App. 824, 840 P.2d 905 (1992) (reversed on other grounds).
*279 State v. Bryant, 65 Wash.App. 428, 828 P.2d 1121, review denied, 119 Wash.2d 1015, 833 P.2d 1389 (1992).
State v. Graham, 64 Wash.App. 305, 824 P.2d 502 (1992).
State v. Rhode, 63 Wash.App. 630, 821 P.2d 492 (1991), review denied, 118 Wash.2d 1022, 827 P.2d 1392 (1992).
State v. Dukowitz, 62 Wash.App. 418, 814 P.2d 234 (1991), review denied, 118 Wash.2d 1031, 828 P.2d 563 (1992).
State v. Roberts, 76 Wash.App. 192, 883 P.2d 349 (1994), review denied, 126 Wash.2d 1011, 892 P.2d 1089 (1995).
State v. VanValkenburgh, 70 Wash.App. 812, 856 P.2d 407 (1993).
State v. Johnson, 69 Wash.App. 935, 851 P.2d 701 (1993).
State v. Craven, 67 Wash.App. 921, 841 P.2d 774 (1992).
State v. Berglund, 65 Wash.App. 648, 829 P.2d 247, review denied, 119 Wash.2d 1021, 838 P.2d 691 (1992).
State v. Gallegos, 65 Wash.App. 230, 828 P.2d 37, review denied, 119 Wash.2d 1024, 838 P.2d 690 (1992).
State v. Sanders, 65 Wash.App. 28, 827 P.2d 354, review denied, 119 Wash.2d 1024, 838 P.2d 691 (1992).
State v. Janes, 64 Wash.App. 134, 822 P.2d 1238 (1992) (reversed on other grounds).
State v. Sanchez, 62 Wash.App. 329, 814 P.2d 675 (1991).
NOTES
[1] As to personal jurisdiction, the parties agree that there is no issue. The superior court acquired personal jurisdiction over Dominique when she appeared at her arraignment. See State v. Cronin, 130 Wash.2d 392, 398, 923 P.2d 694 (1996). We regard as anomalous one federal case describing the problem of a name omitted from the charging language as a defect depriving the court of in personam jurisdiction. See Chow Bing Kew v. United States, 248 F.2d 466, 468-69 (9th Cir.1957).
[2] Cronin held that a notice of special sentencing (death penalty) was properly served on the defendants when a copy of the notice was delivered to the office of each defendant's attorney. Cronin, 130 Wash.2d at 394, 923 P.2d 694. The Cronin court noted, in dicta, the superior court "acquired subject matter jurisdiction at the commencement of the action (see State v. Sponburgh, 84 Wash.2d 203, 206, 525 P.2d 238 (1974)) and personal jurisdiction when [the defendants] appeared at their arraignment. State v. Melvern, 32 Wash. 7, 12, 72 P. 489 (1903)." Cronin, 130 Wash.2d at 398, 923 P.2d 694.
[1] 117 Wash.2d 93, 812 P.2d 86 (1991).
[2] Kjorsvik, 117 Wash.2d at 97, 812 P.2d 86.
[3] Kjorsvik, 117 Wash.2d at 101, 812 P.2d 86 (citing State v. Leach, 113 Wash.2d 679, 695, 782 P.2d 552 (1989)).
[4] Kjorsvik, 117 Wash.2d at 103, 812 P.2d 86.
[5] Kjorsvik, 117 Wash.2d at 104-05, 812 P.2d 86.
[6] Kjorsvik, 117 Wash.2d at 108, 812 P.2d 86.
[7] Kjorsvik, 117 Wash.2d at 105-06, 812 P.2d 86.
[8] Kjorsvik, 117 Wash.2d at 110-11, 812 P.2d 86.
[9] Kjorsvik, 117 Wash.2d at 111, 812 P.2d 86.
[10] 285 U.S. 427, 433, 52 S.Ct. 417, 76 L.Ed. 861 (1932).
[11] Kjorsvik, 117 Wash.2d at 104, 812 P.2d 86.
[12] Kjorsvik, 117 Wash.2d at 118, 812 P.2d 86 (Utter, J., dissenting).
[13] Kjorsvik, 117 Wash.2d at 118-19, 812 P.2d 86.
[14] The published opinions applying the two-prong Kjorsvik test are set out in the attached appendix.