IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36466-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| DWIGHT ELDON BACKHERMS, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — After findings of guilt of Dwight Backherms by a jury on two counts of delivery of controlled substances and two counts of possession of controlled substances, the trial court dismissed the two charges of possession based on double jeopardy. The court entered convictions for the higher charges of delivery. On appeal, Backherms challenges all four convictions on the basis that law enforcement officers unlawfully entered his home and seized the evidence of controlled substances. Backherms also challenges his convictions for delivery because jury instructions required the State to prove he knew the nature of the controlled substances and the State failed in its proof. We agree to the dismissal of the charges for delivery of controlled substances because of insufficiency of evidence. We reinstate the possession convictions because, contrary to Backherms' contention, law enforcement officers lawfully entered his home and seized the controlled substances.

FACTS

We take the facts from the trial court's unchallenged findings of fact following a CrR 3.6 hearing and from testimony at the suppression hearing. On May 3, 2018, Okanogan County Sheriff Deputy Robert Ray received an e-mail notification of a Department of Corrections felony arrest warrant for Dwight Backherms. Deputy Ray knew Backherms and the location of his residence from earlier arrests and knew of his past drug use because of his cooperation with a drug task force. Later that day, Deputy Ray and Deputy Gisberth Gonzalez traveled to Backherms' residence along Highway 7, in Oroville, to execute the arrest warrant.

When Deputies Robert Ray and Gisberth Gonzalez arrived at Dwight Backherms' property, the duo approached the front door of Backherms' mobile home. The door was ajar, but a metal screen door was closed. Deputy Ray saw two occupants as he peered through the screen door. Ray identified a female, Mary Pebworth, who he knew resided with Backherms. Ray heard a male voice, but could not see the voice's physiognomy. Deputy Ray lingered at the front door for ten minutes until the male rotated. Ray recognized the man as Backherms.

Deputy Robert Ray knocked on the door, advised Dwight Backherms of the warrant for his arrest, and bid him to exit the mobile home. A disobedient Backherms moved as if to walk down a hallway. Deputy Ray told Backherms that he would enter the residence and detain him if Backherms did not comply with his instruction. Backherms

turned his back to Ray. Ray espied Backherms reach into his left pocket, retrieve two baggies, and hand them to Mary Pebworth, who sat at the kitchen table. Deputy Ray concluded, based on his training and experience on the storage of controlled substances and his knowledge of Backherms' narcotics use, that the bags contained drugs. He worried that Pebworth would destroy the substances inside the baggies. He concluded that he lacked time to call a magistrate and obtain a warrant to enter the home because Pebworth would either ingest the content of the bags or flush the bags down the toilet.

Deputy Robert Ray entered Dwight Backherms' residence. Deputy Ray asked Mary Pebworth what Backherms gave her. Backherms retreated, but Deputy Ray directed Deputy Gisberth Gonzalez to detain Backherms. Ray again asked Pebworth what Backherms handed her, and Pebworth expressed confusion about the question. At Deputy Ray's direction, Pebworth stood. Two small plastic bags appeared on the seat where Pebworth previously sat.

Deputy Robert Ray examined the contents of the baggies. One bag contained clear crystal shards, which Ray believed to be methamphetamine. The other bag contained a black, tarry substance, which Ray deemed to be heroin. A forensic scientist from the Washington State Patrol Crime Lab later tested the substances and confirmed their respective identities as methamphetamine and heroin.

PROCEDURE

The State of Washington charged Dwight Backherms with two counts of possession of a controlled substance other than marijuana. The State later amended its information to include the additional charges of delivery of a controlled substance, methamphetamine, and delivery of another controlled substance, heroin.

Dwight Backherms brought a motion to suppress. He argued exigent circumstances did not justify entry into his residence such that the deputies needed a search warrant. The State responded that the felony arrest warrant justified entry into the home and exigent circumstances warranted the search and seizure of the controlled substances.

During the suppression hearing, the trial court inquired of Deputy Robert Ray:

> [THE COURT:] So, Dep. Ray, did you go in—because—Mr. Backherms turned away from you, after you said you had a warrant and he needed to come outside[?] I gather that he—he didn't come outside; instead he went down a hall, away from you.
> So my question is, did you go in after him because he went away from you or because you saw something[?]
> [RAY:] Because when I saw him and—the—what I believed to be narcotics—Mary.
> [THE COURT:] So you didn't go in based on having the arrest warrant.
> [RAY:] Not at that point, no, [Y]our Honor.

Report of Proceedings (RP) at 19. The trial court denied Dwight Backherms' suppression motion.

4

The prosecution proceeded to a jury trial. Deputy Robert Ray's trial testimony matched his CrR 3.6 motion testimony.

Dwight Backherms called Mary Pebworth to testify. Pebworth testified that she went to Backherms' residence on May 3, 2018, to socialize and have dinner. She explained the mobile home had no electricity and that a single battery-powered lantern on the kitchen table lit the mobile home. Pebworth testified that she put baggies on the table when she arrived and tucked them under her leg when Deputy Robert Ray entered. She did not know the exact contents in the baggies, but she planned to "[g]et high" with them. RP at 251. She insisted that she possessed the bags before she entered Backherms' residence.

According to Mary Pebworth, the baggies belonged to her, and no one else possessed them. She denied that Dwight Backherms handed her the bags while the deputy watched. On cross-examination, she denied previously telling Deputy Robert Ray that the drugs belonged to Backherms.

Jeffrey Herschlip also testified for the defense. He also lived at the Highway 7 address and was inside the residence that evening. Herschlip testified that no one handed anything to Mary Pebworth when Deputy Robert Ray announced his presence. He recalled no baggies being on the table.

On rebuttal, Deputy Robert Ray testified that, from the front door, he enjoyed an unobstructed view of the kitchen table and saw the faces of the residents. He averred that

a clear line of sight enabled him to view Mary Pebworth before Dwight Backherms

turned and handed her the baggies. Deputy Ray reiterated that, when he told Pebworth

that she could be charged with possession of narcotics, she replied that she did not wish

any more trouble for Backherms. According to Deputy Ray, Ray released Pebworth from

restraints after she told Ray that the baggies belonged to Backherms. Pebworth never

claimed ownership of the drugs.

The trial court's to-convict instruction for count 3, delivery of a controlled

substance, included a knowledge element providing:

> To convict the defendant of the crime of delivery of a controlled
> substance, each of the following elements of the crime must be proved
> beyond a reasonable doubt:
> (1) That on or about May 3, 2018, the defendant [Dwight
> Backherms] delivered a controlled substance, to wit: Methamphetamine;
> and
> (2) *That the defendant knew that the substance delivered was a
> controlled substance, to wit: Methamphetamine*; and
> (3) That any of these acts occurred in the County of Okanogan, State
> of Washington.
> If you find from the evidence that each of these elements has been
> proved beyond a reasonable doubt, then it will be your duty to return a
> verdict of guilty.
> On the other hand, if, after weighing all of the evidence, you have a
> reasonable doubt as to any one of these elements, then it will be your duty
> to return a verdict of not guilty.

Clerk's Papers (CP) at 52 (emphasis added). The court's to-convict instruction for count

4, delivery of a controlled substance, read identically, except that the second element

required the State to prove "That the defendant *knew* that the substance was a controlled

substance, to wit: *Heroin*." CP at 53 (emphasis added). The State proposed the two instructions.

The jury returned guilty verdicts on all four counts. Dwight Backherms moved to arrest judgment on counts 1 and 2, the possession counts, based on the doctrine of merger and double jeopardy. According to Backherms, the possession counts merged into the delivery convictions. The trial court granted the motion and dismissed counts 1 and 2 with prejudice.

## LAW AND ANALYSIS

Dwight Backherms raises two principal errors on appeal. First, Okanogan County sheriff deputies lacked lawful authority to enter his home and seize the methamphetamine and heroin. Second, under the law of the case doctrine, the State needed to prove he knew the baggies respectively enclosed heroin and methamphetamine because the jury instructions so read. In turn, according to Backherms, the State failed to prove knowledge of the identity of the controlled substances. If we agreed with Backherms' first assignment of error, we presumably would reverse the two convictions for delivery of controlled substance and affirm the dismissal of the two possession charges, although the latter on grounds other than employed by the trial court.

## Motion to Suppress

The trial court based its denial of Dwight Backherms' motion to suppress on three independent grounds. First, the officers could enter the residence to execute the

7

Department of Corrections arrest warrant. Second, Deputy Robert Ray could enter the home as a result of seeing the controlled substances while looking inside the mobile home through the open front door. Third, exigent circumstances justified the entry and seizure of the methamphetamine and heroin because Deputy Ray justifiably feared destruction of evidence. In affirming the trial court, we rely solely on exigent circumstances.

Although we do not conclude that the sheriff deputies' entry into Dwight Backherms' home was warrantless, we assume for argument's sake that the officers lacked a warrant. Generally, warrantless searches and seizures are per se unreasonable under both the federal and state constitutions unless a recognized exception applies. *State v. Ruem*, 179 Wn.2d 195, 200, 313 P.3d 1156 (2013). Washington courts recognize exceptions for consent, exigent circumstances, searches incident to a valid arrest, inventory searches, plain view, open view, and investigative stops. *State v. Tibbles*, 169 Wn.2d 364, 369, 236 P.3d 885 (2010). The State bears the burden to prove an exception applies. *State v. Tibbles*, 169 Wn.2d at 369.

The exigent circumstances exception to the warrant requirement applies when the delay inherent in securing a warrant would compromise officer safety, facilitate escape, or permit the destruction of evidence. *State v. Smith*, 165 Wn.2d 511, 517, 199 P.3d 386 (2009); *State v. Audley*, 77 Wn. App. 897, 907, 894 P.2d 1359 (1995). In order to show exigent circumstances, the State must identify specific, articulable facts and the

8

reasonable inferences therefrom which justify the intrusion. *State v. Coyle*, 95 Wn.2d 1, 9, 621 P.2d 1256 (1980). Mobility or destructibility of evidence looms important to exigent circumstances. *State v. Tibbles*, 169 Wn.2d at 370. If law enforcement reasonably fears the destruction of evidence, a court will uphold a warrantless entry into a home. *United States v. Martino*, 664 F.2d 860, 869(2d Cir. 1981); *State v. Counts*, 99 Wn.2d 54, 62, 659 P.2d 1087 (1983).

Dwight Backherms compares his appeal to *State v. White*, 76 Wn. App. 801, 888 P.2d 169 (1995), *aff'd*, 129 Wn.2d 105, 415 P.2d 1099 (1996). In *White*, Gregory White argued for suppression of evidence because a law enforcement officer peered over the top of a toilet stall to observe the presence of controlled substances. The officer testified that he searched the bathroom stall in order to prevent destruction of evidence and to protect officer safety. From his experience, people involved in drug transactions sometimes disposed of drugs by flushing them down the toilet. The officer did not identify any circumstances, however, to support a specified belief that White was destroying evidence or that White even knew the police pursued him. This court found this testimony insufficient to support an objective belief that White was likely to destroy evidence. Accordingly, the court held that the search was not justified by the exigent circumstances exception.

Dwight Backherms contends that Deputy Robert Ray only speculated that Mary Pebworth would destroy the drug evidence. We disagree. Unlike in *State v. White*,

9

wherein the defendant did not know the police pursued him, Backherms and Pebworth knew of Deputy Ray's presence when Ray, from outside the residence, advised Backherms of his arrest warrant. Backherms and Pebworth had reason to conceal any contraband, and Backherms in fact handed the bags to Pebworth to hide. Deputy Ray knew from Backherms' history of narcotic use that Backherms transferred the stash to Pebworth. Ray entered the residence to keep Pebworth from destroying the narcotics. If Deputy Ray retreated to call for a search warrant, Pebworth or Backherms could have destroyed the evidence. Deputy Ray did not base exigent circumstances on a belief of what people in general do.

Convictions for Delivery

Dwight Backherms contends that the to-convict instructions for delivery of a controlled substance required the State to prove he knew the specific identity of the controlled substances he delivered and that sufficient evidence does not establish such knowledge. The State bears the burden of proving all elements of an offense beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3. When reviewing a challenge to the sufficiency of the evidence, this court must determine whether, after viewing the evidence and all reasonable inferences in a light most favorable to the State, a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (plurality opinion). A

10

claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Retrial following reversal for insufficient evidence is prohibited and dismissal is the remedy. *State v. Hardesty*, 129 Wn.2d 303, 309, 915 P.2d 1080 (1996).

The State charged Dwight Backherms with two counts of delivery of a controlled substance. The elements of delivery are (1) delivery and (2) guilty knowledge. *State v. Nunez-Martinez*, 90 Wn. App. 250, 253, 951 P.2d 823 (1998); RCW 69.50.401(1). Proof of "guilty knowledge" is an essential element of the crime of delivering a controlled substance even though the statute does not contain a knowledge element. *State v. Clark-El*, 196 Wn. App. 614, 625, 384 P.3d 627 (2016). Guilty knowledge is "knowledge that the substance being delivered is a controlled substance." *State v. Nunez-Martinez*, 90 Wn. App. at 254. But, the accused need not know the nature of the forbidden substance. *State v. Hudlow*, 182 Wn. App. 266, 285, 331 P.3d 90 (2014).

Contrary to the law, the trial court delivered jury instructions that read that the jury must respectively find, for the two charges, that Dwight Backherms knew the substances to be methamphetamine and heroin. Under the law of the case doctrine, jury instructions not objected to are treated as the applicable law for purposes of appeal. *State v. Johnson*, 188 Wn.2d 742, 755, 399 P.3d 507 (2017). In criminal cases, the State assumes the burden of proving otherwise unnecessary elements of the offense when such added elements are included without objection in the "to convict" instruction. *State v. Hickman*,

11

135 Wn.2d 97, 102, 954 P.2d 900 (1998). In turn, on appeal, a defendant may challenge the sufficiency of evidence of an element in the "to convict" instruction, even if that element is not part of the underlying statute. *State v. Hickman*, 135 Wn.2d at 102.

*State v. Ong*, 88 Wn. App. 572, 945 P.2d 749 (1997), controls this appeal. In *Ong*, the State accused Steven Ong of giving a morphine tablet to a child. Similar to here, the law of the case doctrine operated to require the State to prove Ong knew the tablet to contain morphine. The State presented evidence of (1) Ong's five felony convictions, (2) Ong's drug paraphernalia of syringes, a straw, a smoking device, and cotton, (3) small numbers marked on the tablets, (4) his testimony that he knew the pills were "pain medication," (5) his testimony that he stole the pills, and (6) his flight to Bremerton, which showed consciousness of guilt. *State v. Ong*, 88 Wn. App. at 577. But nothing in this evidence pointed to knowledge that the substance was specifically morphine rather than any other controlled substance. Thus, even viewing the evidence in a light most favorable to the State, the lack of the requisite knowledge element proved insufficient to support Ong's conviction for delivery of a controlled substance.

Dwight Backherms argues that, when viewing the evidence in the light most favorable to the State, the State presented even less evidence to suggest he knew the specific identity of the controlled substances than the State presented in *State v. Ong*. We agree. Unlike in *Ong*, the deputies saw no evidence of other drug paraphernalia. The State presented no testimony regarding any prior or current drug use or convictions. At

12

most, the handing of the baggies to Mary Pebworth showed consciousness of guilt. But, like *Ong*, nothing in the evidence showed Backherms knew the substances were methamphetamine and heroin compared to any other controlled substance.

Because retrial following reversal for insufficient evidence is unequivocally prohibited, dismissal is the remedy. *State v. Hickman*, 135 Wn.2d at 103 (1998). Therefore, we reverse and dismiss the two convictions for delivery of controlled substances.

Since we dismiss the charges of delivery of controlled substances, we must determine whether to reinstate Dwight Backherms' convictions for possession of methamphetamine and heroin. The jury instructions for possession did not require the State to prove Dwight Backherms knew the nature of the controlled substance in order to convict him. The trial court dismissed the possession charges with prejudice solely on the ground that the convictions violated double jeopardy because of the other convictions for delivery, which we now reverse.

Under Washington law, a lesser conviction previously vacated on double jeopardy grounds may be reinstated if the defendant's conviction for the more serious offense based on the same act is subsequently overturned on appeal. *State v. Turner*, 169 Wn.2d 448, 466, 238 P.3d 461 (2010). Therefore, we reinstate the two possession convictions.

CONCLUSION

We dismiss with prejudice charges against Dwight Backherms for delivery of

13

methamphetamine and delivery of heroin. We reinstate Backherms' two convictions for possession of a controlled substance. We remand to the trial court for resentencing based on convictions of lower charges.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, A.C.J.

_____
Siddoway, J.

No. 36466-6-III

KORSMO, J. (concurring) — I have signed the majority opinion, but feel compelled to pen a few words over the ever-growing problems that have developed among the progeny of the unholy marriage of *Blakely* and *Hickman*.[1]  Although Mr. Backherms wins this round, his victory hands prosecutors a significant weapon that perhaps will bring an end to the game-playing.  Or maybe simply raise it to another level altogether.

The *Hickman* doctrine is a two-way street.  Both sides are bound by an unchallenged instruction.  *State v. Owens*, 180 Wn.2d 90, 101 n.6, 323 P.3d 1030 (2014) (defendant's failure to challenge instruction waived claim under *Hickman*).  Accordingly, in addition to *requiring* prosecutors to prove negligently added elements, *Hickman* also *allows* a prosecutor to intentionally add elements and attempt to prove them.  For someone with a relevant past criminal history, the doors are open to the prosecution to bring that past before the jury as an element it must prove.

Drug cases present an easy example.[2]  In order to prove the defendant's knowledge of the identity of the controlled substances, prior convictions involving the

---

[1] *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004); *State v. Hickman*, 135 Wn.2d 97, 954 P.2d 900 (1998).

[2] It is not hard to imagine other scenarios—pleading a continuing course of conduct and then proving that conduct, etc.

same substance would be admissible as substantive evidence of the defendant's

knowledge. Neither ER 609, nor ER 403 or ER 404 would stand in the way. The only

ways to defeat such action would be to stipulate to the identity of the substance or

propose proper instructions prior to trial. Either action takes away the *Hickman* problem.

They also take away the *Hickman* issue.

The proper procedure is for element instructions to not contain extraneous

elements such as the identity of the controlled substance and for the jury to determine the

identity of the controlled substance in a special interrogatory or special verdict form. The

sooner *both* parties start presenting jury instructions in that manner, the sooner we can

put these issues to rest.

I concur.

_____
Korsmo, J.

2